# SECOND DISTRICT, 1901.

## NEW YORK LIFE INSURANCE COMPANY v. ELIZABETH ORLOPP, ADMINISTRATRIX.

### Decided February 2, 1901.

**1.—Life Insurance Policy—Statutes of Another State Governing.**

Where a life insurance policy stipulates that it shall be construed and governed by the laws of another State, the statutes of such other State applicable thereto are to be treated as part of the written contract, and can not be waived by the parties.

**2.—Same—Construction of Foreign Statute—Pleading and Evidence Requisite.**

Where the statute of another State governing the contract has received any peculiar construction by the courts of such State which is relied on in the courts of the State, such construction must be pleaded and proved here like any other fact, and where this is not done, a refusal here to follow such construction is not violative of the provision of the Federal Constitution requiring full faith and credit to be given to the public acts, records, and judicial proceedings of each State.

**3.—Same—Lapse of Renewed Policy—Notice Before ̇Forfeiture.**

Where a life policy, made subject to the laws of New York (which prohibit the forfeiture of a policy for nonpayment of a premium unless notice is given fifteen days before it is payable), was duly declared lapsed for failure to pay a premium, but was afterward reinstated on payment of a part of the premium and the giving of notes for the balance containing a provision that all benefits should be forfeited if the notes were not paid at maturity, this constituted a renewal of the policy, and the insurer could not, upon a failure to pay such notes at their maturity, declare the policy lapsed without having given to the insured the prior notice of the time when the notes fell due.

**4.—Same—Statutory Penalty—Constitutional Law.**

The provision of the Texas statute imposing a penalty of 12 per cent and the payment of attorney fees on life insurance companies for failure to pay a loss within the time specified in the policy, is not violative of the fourteenth amendment of the Federal Constitution as denying the equal protection of the law.

Appeal from Tarrant.   Tried below before Hon. W. D. Harris.

*West & Smith,* for appellant.

*Ross & McLean, H. M. Chapman,* and *T. J. Powell,* for appellee.

HUNTER, ASSOCIATE JUSTICE.—This suit was brought by appellee as administratrix of the estate of Harry A. Orlopp, on the 14th day of December, 1898, to recover of appellant on two life insurance policies,. one for $4000 and the other for $3000, both dated May 9, 1893, issued on the life of the said Harry A. Orlopp, and payable to his executors,. administrators, or assigns upon the death of the insured, and for reasonable attorney's fees, and 12 per cent damages as provided in article 3071, Revised Statutes of Texas. The amount of premium on the first. was $112, and that on the second was $84, due and payable on the 1st. day of May of every year in advance, and it was stipulated in said policies that if said annual premiums were not paid by or before said day,. said policies should lapse and become void, and all payments made thereon should be forfeited to the company.. It was also stipulated that. the said contracts, or policies, should be construed and governed by the laws of the State of New York. The first premiums were paid May 1, 1893, but the premiums due May 1, 1894, were not paid, and the policies, by reason thereof, under the terms of the contracts, lapsed and became void, the company having given the notices required by section 92 of chapter 690, Laws of New York, 1892. On August 7, 1894, Harry A. Orlopp applied to the company to reinstate his policies, paying to the company one-fourth of each premium, and executing his two notes for the balance, each due November 1, 1894, and furnishing a health certificate as required by the company. A renewal certificate was issued by the company and sent to its local agent at Forth Worth,. where Orlopp resided, but was never delivered to Orlopp, for the reason, as the local agent testified, that it was the custom of the company not. to deliver such certificates until the notes were paid. The company accepted the cash, notes and health certificate, and afterwards, at maturity, sent the notes to a bank in Fort Worth for collection on November 1, 1894, and they were presented to Orlopp, and their payment demanded on the day of their maturity, and Orlopp failed to pay them. On April 20, 1895, Orlopp wrote the secretary of the company in New York offering to pay the notes, and the secretary, on April 22, answered that it would be necessary to furnish another health certificate, and send check for amount of notes, $146, and $7.30 accumulated interest, before the policies could be reinstated. Orlopp refused to furnish another health certificate. He tendered and caused to be tendered the regular annual premiums for 1895, 1896, 1897 and 1898 on May 1 of each year, which were declined and returned by the company upon the ground that the policies were lapsed and void, and on June 22, 1898, Orlopp died. Proofs of death were waived by the company by refusing to furnish blank forms upon which to make such proofs, the policies. requiring proofs to be made according to the company's forms.

The appellant company pleaded and proved the New York statute,. setting it out in its answer, and claimed forfeiture of policies for failure to pay premium due May 1, 1894, and for failure to pay the notes ;. while plaintiff pleaded a reinstatement of the policies, and a failure on

the part of the company to give notice under the statute of the due date of the notes, etc.    The appellant proved the statute as follows:

"NONFORFEITURE OF POLICY WITHOUT NOTICE.

"Sec. 92.    No life insurance corporation doing business in this State shall declare forfeited or lapsed any policy hereafter issued or renewed, and not issued upon the payment of monthly or weekly payments, unless the same is a term insurance contract for one year or less, nor shall any such policy be forfeited or lapsed by reason of nonpayment, when due, of any premium, interest, or installment or any portion thereof required by the terms of the policy to be paid, unless a written or printed notice stating the amount of such premiums, interest, or installment, or portion thereof, due on said policies, the place where it should be paid, the person to whom it is payable, shall be mailed and addressed to the person whose life is insured, or the assignee of the policy, if notice of the assignment has been given to the corporation, at his or her last known postoffice address, postage paid by the corporation, or by an officer thereof, or person appointed by it to collect such premiums, at least fifteen days, and not more than forty-five days, prior to the day when the same is payable.    The notice shall also state that unless said premium, interest, or installment, or portion thereof, then due, shall be paid to the corporation, or to a duly appointed agent or person authorized to collect such premiums, by or before the day it falls due, the policy and all payments thereon will become forfeited and void, except as to a surrender value or paid-up policy, as in this chapter provided. If the payment demanded shall be made in the time limited therefor, it shall be taken in full compliance with the requirements in the policy in respect to the time of payment, and no such policy shall in any case be forfeited or declared forfeited or lapsed until the expiration of thirty days after the mailing of such notice.    The affidavit of any officer, clerk, or agent of the corporation, or of anyone authorized to mail such notice, that the notice required by this section has been duly addressed and mailed by the corporation issuing such policy, shall be presumptive evidence that such notice has been duly given."

But it did not plead nor offer in evidence any decision of the courts of New York construing said statute; nor otherwise allege or offer to prove what construction had been given it by the courts of that State. The notes executed for part of the premiums due May 1, 1894, were in the following form:

"Pol. 535,985.                    "NEW YORK, May 1, 1894.

"Six months after date I promise to pay to the order of the New York Life Insurance Company sixty-three dollars, at City National Bank, Fort Worth, Texas, value received, with interest at the rate of five per cent per annum.    This note is given in part payment of the premium due May 1, 1894, on the above policy, with the understanding that all claims to further insurance, and all benefits whatever, which full payment in cash of said premium would have secured, shall become

immediately void, and be forfeited to the New York Life Insurance Company if this note is not paid at maturity, except as otherwise provided in the policy itself.

"$63.                    (Signed)                "H. A. ORLOPP."

The case was tried by the court without a jury, and judgment rendered for appellee for the full amount of the policies, less the amount due on the two notes, and less the premiums for 1895, 1896, 1897, and 1898, the court refusing to give judgment for the 12 per cent damages, on the ground that the said article of the Texas statute was in violation of the fourteenth amendment to the Constitution of the United States, and the appellant brings the case here for revision. The appellee has also filed a cross-assignment of error to the court's action in refusing to render judgment in her favor for the 12 per cent damages allowed by the Texas statute, the court having sustained a demurrer to the claim for damages and attorney's fees as claimed under said statute.

There are but two questions involved in this appeal. The first is raised by appellant, and is: Whether, under the provisions of the New York statute above quoted, it was necessary to give the insured notice when the notes fell due, in order to entitle it to declare the contracts forfeited? The other is raised on appellee's cross-assignment of error, and is: Whether article 3071 of our Revised Statutes, imposing a penalty of 12 per cent, and the payment of reasonable attorney's fees on life and health insurance companies doing business in this State, for failure to pay a loss, is in violation of the first section of the fourteenth amendment to the Constitution of the United States?

In determining the question raised by appellant, we are compelled to construe the New York statute quoted and declare the meaning of the contract, reading the statute as a part of it. To do this involves only the well-known rule which requires the courts to declare the legal effect of a written instrument put in evidence, because such statute becomes a part of the written contract, and must be construed as such, with these differences, however; (1) the requirements of such a statute can not be waived by the parties; and (2) the statute ought, perhaps, to receive the same construction by the courts of another State as is given to it by the courts of last resort in the State where it was enacted. This rule is based, it is said, upon that section of our Federal Constitution which declares that "Full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State." U. S. Const., art. 4, sec. 1. These "public acts, records, and judicial proceedings" of one State are facts to be alleged and proved in the courts of another State; and where any public act of a State has received any peculiar construction by the courts of that State which is relied on in the courts of another State, it is incumbent upon the party insisting upon such peculiar construction to plead and prove the same like any other fact. Lloyd v. Matthews, 155 U. S., 222, 39 L. Ed., 128; Chicago & A. R. Co.

v. Wiggins Ferry Co., 119 U. S., 616, 30 L. Ed., 519; Hanley v. Donoghue, 116 U. S., 1, 29 L. Ed., 535. So that, in this case, we are not only not required to look to the decisions of the courts of New York to ascertain how they have construed this statute, but we are not authorized to do so, for that would be deciding this question of fact upon evidence not in the record and not pleaded by the parties.

Appellant's counsel have read in argument to us and have cited in their briefs the opinion of the Court of Appeals of New York in the case of Conway v. Insurance Company, 140 New York, 79, and also the cases of Banholzer v. Insurance Company, 77 Northwestern Reporter, 295, and 78 Northwestern Reporter, 244, decided by the Supreme Court of Minnesota, following the decision in the New York case, both seeming to hold that where notice under that statute was given of the due date of the annual premium, etc., and a part of it is paid, and a note like the one in this case is given for the balance, no notice is necessary of the due date of the note before forfeiture may be declared by the company. But in the Minnesota case, as appears from the first decision, that learned court, it seems, would have decided the point the other way, that is, that such notice on the note *was* necessary, had it not considered the question settled by the New York case; and on motion for rehearing Mr. Justice Canty dissented, maintaining that that part of the New York case relating to notice was mere dicta, and said: "By every sound rule of interpretation, the letter of the statute of New York applies to a case where the time of payment of an installment of the premium has been extended, and, clearly, such a case is within·the spirit of the statute, and notice should be given of the time when the installment, as thus extended, will fall due." In the report of the Banholzer case it does not appear affimatively that the pecular construction given the statute by the New York court was pleaded or proved, but we infer both, as the court felt bound to follow that decision, even against the views, it seems, of four out of five of its members, as indicated by Justice Mitchell in the original opinion.

We therefore decline to consider the New York case except as matter of argument, and, considered in that light, it is not satisfactory on the point involved. Indeed, the distinguished jurist who wrote the opinion seems to have based the decision of the case on another point, the authority of the agent to accept the note and extent the time of payment of the premium, holding that he had no such authority. It was not, therefore, necessary to decide whether notice of the due date of the void note was required, or whether the statute applied to such cases, and this question the learned judge did not discuss.

The renewal contract did not change the policies so as to constitute them contracts for term insurance and hence not subject to the statute. See Insurance Co. v. Smith, 41 S W. Rep., 680, and authorities there cited; Insurance Co. v. Statham, 93 U. S., 24, 23 L. Ed., 789.

We come, then, to consider the terms of the statute just as if they were literally printed in the policies, as we are required to consider and

construe any other written contract, except, as it was proved to be the statute law of New York, its provisions are mandatory and can not be waived by the contracting parties. See Insurance Co. v. Hill, 97 Fed. Rep., 263; Society v. Clements, 140 U. S., 226; Hicks v. Insurance Co., 60 Fed. Rep., 690. And we first conclude that the policies sued on lapsed, and all benefits thereunder were forfeited, on May 16, 1894, that being thirty days after the mailing of the notice to the insurer, which mailing the evidence shows to have been done on the 14th day of April, 1894. And we also conclude that the acceptance by the company of one-fourth of the May, 1894, premiums in cash, and the two notes due November 1, 1894, for the balance of said premiums, amounted in law to a reinstatement or renewal of the policies with an extension of the time of payment on three-fourths of the premiums to November 1, 1894. We can not escape the conclusion that these notes were given for a portion of the May, 1894, premiums, and if we are correct in this conclusion, the statute applies to this extended portion of the premiums the same as it did to the whole premiums before the notes were executed. The language is: "No life insurance corporation * * * shall declare forfeited or lapsed any policy hereafter issued or renewed, * * * nor shall any such policy be forfeited or lapsed by reason of nonpayment, when due, of any premiums, interest, or installments, or any portion thereof, * * * unless" the notice prescribed therein is given "at least fifteen days, and not more than forty-five days, prior to the day when the same is payable," etc.

These policies were "renewed" policies, a portion of the premiums, by the terms of the renewal contract made in August, 1894, became due on November 1, 1894, and no notice of the due date, or that a forfeiture would ensue if payment was not made at maturity, was ever given on these "portions" of the premiums. Hence, no lapse of the policies or forfeitures followed the failure to pay the notes at maturity, and the tender of the amount due upon the notes, and of the succeeding annual premiums for the years 1895, 1896, 1897, and 1898, kept the policies alive and in full force until the death of the insured. The administratrix, therefore, was entitled to recover the full amount of the policies, less the unpaid premiums, as adjudged by the District Court.

This brings us to consider the cross-assignment of error, which is as follows: "The court erred in not rendering judgment for plaintiff and against defendant for 12 per cent statutory damages." The learned judge had sustained a special exception to the claim of plaintiff for the damages and reasonable attorney's fees allowed by article 3071 of our Revised Statutes in cases like this, and in his conclusions of law takes occasion to express his judicial views on the unconstitutionality of the article in question as follows:

"3. That the claim for attorney's fees and damages for the nonpayment of the policy is unconstitutional, and is an unreasonable and unconscionable penalty placed on an insurance company for daring to avail

itself of the privilege of litigating its rights, or what it conceives to be its rights, in the courts of the country. (Signed) W. D. Harris, Judge."

The statute under consideration is as follows: "In all cases where a loss occurs, and the life or health insurance company liable therefor shall fail to pay the same within the time specified in the policy, after demand made therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of the loss, 12 per cent damages on the amount of such loss, together with all reasonable attorney's fees for the prosecution and collection of such loss." The exception which his honor sustained urged that the article was in violation of the fourteenth amendment to the Constitution of the United States, and that is the contention of appellant's counsel here. The last clause of section 1 of said fourteenth amendment provides that: "No State shall deny to any person within its jurisdiction the equal protection of the laws."

This court, on April 25, 1894, in the case of Insurance Company v. Walden, 26 Southwestern Reporter, 1012, was the first to decide the constitutional question here presented in favor of the validity of the statute. The next decision was by our Supreme Court, on May 10, 1894, in the case of Insurance Company v. Chowning, 86 Texas, 654, where Justice Brown fully discusses the question, citing numerous Federal decisions bearing thereon, and upheld the validity of the statute. The question again came before this court January 30, 1897, in the case of Fidelity Company v. Allibone, 15 Texas Civil Appeals, 178, and this court again sustained the constitutionality of the statute, notwithstand- the decision of the Supreme Court of the United States in Railway v. Ellis, 17 Supreme Court Reporter, 255, denouncing a somewhat similar statute of Texas relating to railroads as being in violation of the said fourteenth amendment, was urged as authority for holding this statute void for the same reason. But Justice Stephens, speaking for the court, said: "A late decision of the Supreme Court of the United States [citing the Ellis case] construing a somewhat analogous statute of this State, and reversing the decision of our Supreme Court approving its validity, may be at variance with the cases just cited [the Walden and Chowning cases], but until it is expressly so held, either by our own Supreme Court or that of the United States, we will adhere to the decisions already made." A writ of error was denied by our Supreme Court in this case on April 29, 1897, when Chief Justice Gaines said: "As to the constitutional question, we agree with the Court of Civil Appeals in holding that it is distinguishable from that passed upon by the Supreme Court of the United States in Railway v. Ellis, 17 Supreme Court Reporter, 255." Fidelity Co. v. Allibone, 90 Texas, 660.

The same question was, on May 3, 1897, again decided by this court, in the case of Insurance Company v. Smith, 41 Southwestern Reporter, 680, the court being pro tempore composed of the Hon. W. P. McLean, the Hon. A. M. Carter and the writer,—Chief Justice Tarlton and Justice Stephens being disqualified,—when the validity of the statute

was again sustained in the original opinion, though, on motion for rehearing, the two special judges concluded, upon the authority of the Ellis case, to overrule their original opinion delivered by Special Judge Carter, and also to expressly overrule by name all the decisions of this court and of our Supreme Court above cited. The writer, however, dissented upon the ground that the statute in question was valid as being an enactment by the Legislature in the exercise of one of the reserved rights of the States, commonly called the police power of the States, insisting that the Legislature had the right to provide the terms upon which foreign corporations of that class might do business in this State, and that, being a valid exercise of such power and right, the statute formed a part of the contract of every life and health insurance company issued and made in Texas since the date of its enactment in 1874. 41 S. W. Rep., 687.

Thus stood the question until November 21, 1899, when it again arose in the Circuit Court of Appeals of the United States for the fifth circuit, sitting at New Orleans, in the case of Life Association v. Yoakum, 98 Federal Reporter, 251, where McCormick, circuit judge, speaking for the court, says: "The fourth assignment is that 'the court erred in rendering judgment for 12 per cent damages upon $5000, and also for $750 for attorney's fees, for the reason that such charges constitute a penalty upon the defendant for defending this litigation, and discriminate against it, and are consequently contrary to law and unconstitutional.'" He then takes up the history of the article in question as shown by the legislative enactments, and by the decisions of our Supreme Court and of this court on its constitutionality, and also enters into an extended review of the general character of life insurance companies and their manner of doing business, and refers to the very technical decision of our Supreme Court in the case of Fitzmaurice v. Insurance Company, 84 Texas, 61, and to the decision of one of our Courts of Civil Appeals in the case of Hutchinson v. Insurance Company, 39 Southwestern Reporter, 325, in which our Supreme Court refused a writ of error.

Mr. Circuit Judge McCormick, after a severe arraignment of such companies as to their manner of doing business, referring to the statute in question, concludes his able opinion as follows: "It does not discriminate against some and favor others, but, though limited in its application, does, within the sphere of its operation, affect alike all persons similarly situated. It seeks to subserve the general interest of the public. It must be sustained. Whatever may be the sound conclusion as to the unqualified validity of this Texas statute, we hold that the fourth assignment of error in this case is not well taken, on the ground that the State had the right to prescribe the terms upon which foreign corporations may do business there. 'Insurance companies established by charter from one State have no natural right to carry on business in any other State, and permission to do so is a privilege for which the payment of a substantial sum as license may be required.' Tied., Lim. Pol. Power, 281. As articles 3071 and 3072, Revised Statutes of Texas, were in force at

the time the Yoakum policy was written, these provisions were assented to by the contracting parties, and were written into the contract."

Without adopting Judge McCormick's nervous rhetoric as set out in his opinion in that case, we may derive instruction from the facts he recites, and thus more plainly see, as expressed in the dissenting opinion of the writer aforesaid: "That the Legislature of Texas, in the exercise of this great residium of power still left in the people of the State, had the right to enact the statute in question, discriminating against this character of business, and that good reasons, founded in sound State policy, existed therefor; and that, therefore, the statute is not in contravention of the fourteenth amendment to the Constitution of the United States, but is valid and binding as part of the contract sued on in this case, and that the appellee ought to recover the 12 per cent damages as prescribed by the statute the same as if it were written in the face of the policies."

The Supreme Court of the United States, in passing upon a somewhat analogous statute of Kansas, in April, 1899, declared the same doctrine. Railway v. Matthews, 174 U. S., 96, 43 L. Ed., 909. See also Railway v. Hume, 115 U. S., 572, 29 L. Ed., 463; Barbier v. Connolly, 113 U. S., 27, 28 L. Ed., 923:

It appears, therefore, that, with the exception of the special court aforesaid, every court, both State and Federal, which has had occasion to pass upon the validity and constitutionality of this statute, has, in a regular line of decisions running back to April, 1894, found it reasonable, constitutional, and valid, and has upheld it as a legitimate exercise of the legislative power of the State to regulate its own internal affairs.

The judgment of the District Court will therefore be reformed so as to give judgment in favor of appellee, in addition to her recovery on the policies, for 12 per cent on the amount of said judgment, to be added thereto; the whole to bear interest at the rate of 6 per cent per annum from February 10, 1900, the date of the District Court judgment herein. And the judgment thus reformed is affirmed.

*Reformed and affirmed.*

Writ of error refused.

Stephens, Associate Justice, did not sit in this case.