Pen. & At. R. R. Co. v. James W. Braxton.—Syllabus.

# PENSACOLA & ATLANTIC RAILROAD COMPANY, APPELLANTS, VS. JAMES W. BRAXTON, APPELLEE.

CATTLE KILLED BY RAILROADS—WHEN STATUTORY INTEREST AND ATTORNEYS' FEES RECOVERABLE—WHEN NOTICE TO PRODUCE INSTRUMENT NECESSARY AS PREDICATE TO SECONDARY PROOF THEREOF—PAYMENT MADE BY MISTAKE, WHEN RECOVERABLE.

1. The purpose of section 2 of Chapter 3742 laws, approved May 13th, 1887, making provision for the recovery of damages for cattle killed by railroad companies in cases where they have failed to keep their roadways fenced and supplied with cattle-guards, and for the recovery of interest on the damages at the rate of fifty *per cent. per annum*, and attorney's fees, in requiring the plaintiff to give a written notice of his claim prior to the commencement of suit, is to afford the defendant company an opportunity to investigate the justness of the claim, and to permit it, without litigation, either to pay it in full as presented, or to make tender of, or an offer to pay, such an amount thereof as it deems to be just and reasonable. If, after such tender or offer to pay, the plaintiff sues and recovers *no more damages* than he was tendered or offered before suit, then he can not recover either the special statutory interest, nor any attorney's fee, nor any costs; but, on the contrary, in such a case, the defendant is entitled to judgment in its favor for all of its reasonable costs, to be deducted from the amount of damages found for the plaintiff.

2. In order to relieve itself of the liability to a recovery of the special statutory interest, and of attorney's fees, and of the costs of suit in such cases, the defendant company must have, before suit brought, made a tender or offer of payment to the plaintiff of some amount in settlement of his claim as presented in the written notice thereof, and the amount thus tendered or offered must be *nothing less* than the amount afterwards awarded by the judge or jury as the damage actually sustained. If the plaintiff at the trial recovers *any greater* amount as his damages than was offered or tendered before suit, then he is entitled to the special statutory interest and attorney's fees and costs, and this, whether the sum awarded as damages be equal to or less than the amount claimed in the prerequisite written notice.

3. Where the plaintiff in such cases gives the required written notice of his claim, and the defendant company ignores it and makes no tender or offer of any sum in settlement thereof before suit brought, then under this statute, if the plaintiff sues and recovers *any damage whatever*, he is entitled along with it to the special statutory interest, and to attorney's fees and costs.

4 The general rule is, that where it is desired to prove the contents of a written instrument that is in the possession of the adverse litigant, the party desiring such proof, before he can introduce *secondary* evidence of its contents, by copy or otherwise, must lay a foundation for the introduction of such secondary evidence by giving to such adverse litigant possessor of the instrument, or to his attorney, a regular *notice to produce* the original. This general rule, however, is subject to *three exceptions* where such *notice to produce* is not necessary as a preliminary foundation to the introduction of such secondary evidence, which exceptions are as follows: First, where the instrument to be produced and that to be proved are *duplicate originals.* Secondly, where the instrument to be produced is *itself a notice*, such as a notice to quit, or notice of the dishonor of a bill of exchange, etc. Thirdly, where, from the *nature of the action*, the defendant has notice that the plaintiff intends to charge him with possession of the instrument, as for example, in trover for a bill of exchange: *Held*, that the written notice of claims for stock killed by railroads, required by our statute to be given, belong to that class of *notices* where no *notice to produce* the original served on the defendant is necessary as a predicate for the introduction of secondary evidence of its contents.

5. Money paid under a mistake of facts can not be reclaimed where the party paying it has derived a substantial benefit from the payment; nor where the party to whom paid received it in good faith in satisfaction of an equitable claim, nor where it was due in honor and conscience. The right to recovery in such cases turns upon the question as to whether the party receiving the money paid by mistake can in good conscience retain it.

Appeal from the Circuit Court for Jackson county.

The facts of the case are stated in the opinion of the court.

*John H. Carter*, for Appellant.

*Francis B. Carter*, for Appellee.

TAYLOR, J.:

Under the provisions of Chapter 3742 laws of Florida, approved May 13th. 1887, James W. Braxton sued the Pensacola and Atlantic Railroad Company in the Circuit Court of Jackson county for divers head of cattle killed by the defendant's engines, cars, *etc.*, and on the trial before a jury recovered judgment for $84 as damages, with interest under said statute at the rate of 50 *per cent. per annum*, amounting to $35, and $25 for attorney's fees, aggregating $144, besides the costs of the suit; the allegation and proof being that the defendant had failed to keep its roadway fenced and supplied with cattle guards, *etc.* From this judgment the defendant company appeals here, and assigns as error the refusal of the court below to grant its motion for new trial predicated upon the following grounds: (1) The verdict of the jury is contrary to law and to the evidence; (2) The court erred in permitting the plaintiff to testify orally as to the statutory notice alleged to have been given to the defendant company by him of his claim for the stock killed; (3) the court erred in admitting a copy of said statutory notice of claim for stock killed given by the plaintiff to the defendant; (4) the court erred in giving the instructions designated as sections 2 and 3 of the court's charge; (5) the court erred in refusing the charge requested by defendant's counsel.

We will dispose of these assignments in the order here given; and, to a more perfect understanding of the questions presented, we will first outline and quote the statute under which the recovery was had. Section

one of said statute requires all corporations or persons operating railroads in this State to erect and maintain substantial fences on the sides of their roads sufficient to exclude all live stock therefrom, with stock-guards at all public, and at necessary private, crossings. In case of a failure to erect and maintain such fences and stock-guards, such corporations or persons are by said section made liable for damages that shall be done by its engines or cars to any live stock, caused by a failure to erect or maintain said fences and stock-guards; and suit to recover such damage is authorized to be brought in any court having competent jurisdiction by any person having the general or special property in such live stock. Section two of said act is as follows: "That when any live stock is killed or injured as provided for in Section 1 of this act, the person entitled to damages therefor shall give notice and present his claim therefor to any general agent or officer of such corporation or person, or to any station, depot or other agent or officer acting for said corporation or person, in the county where said live stock was killed or injured, which notice and presentment of claim shall be in writing; and if, after said notice, said corporation or person shall fail to pay said claim for the space of thirty days, suit can be brought on such claim, and if, as presented, it was reasonable and just, the jury or judge in said suit shall assess, as damages against such corporation or person, the actual damage to said live stock so killed or injured, fifty *per cent.* interest *per annum* on such damage from the day of the presentment of such claim, together with all reasonable attorney's fees." Section three of said act is as follows: "That if, when said claim is presented as aforesaid, and said corporation or person shall deem said claim unreasonable and unjust, and shall tender or offer to

pay all reasonable and just damages for the stock so killed or injured, and the claimant shall refuse to accept the amount tendered or offered to be paid, and upon the trial the jury or judge, under the proofs, shall find a verdict for not more than the amount so tendered or offered to be paid, the court or judge shall render judgment against the plaintiff, in favor of the defendant, for all reasonable costs, said costs to be deducted from the amount assessed as the damage to the live stock killed or injured, and the plaintiff shall be entitled to no attorney's fees." Section four of said act limits the commencement of actions thereunder to one year after the discovery by the party entitled to said action of the killing or injury of his stock.

At the trial it was shown that the plaintiff, on the 3rd of August, next prior to the bringing of his suit in December, 1889, gave to the defendant company the written notice of his claim and the amount thereof as required by the statute; in which written notice the aggregate valuation put upon the cattle killed, and the amount thereby demanded of the company as damages, was $99. No tender or offer to pay this or any other amount was made by the company to the plaintiff at any time after the service of such written notice and claim upon it. The appellant company now contends that the verdict and judgment are contrary to law, because the jury by their virdict found only the sum of $84 as being the just and reasonable damage suffered by the plaintiff through the killing of his stock, and, therefore, by their verdict found, in effect, that the plaintiff's claim "*as presented*" in his written notice for $99 was unjust and unreasonable; and that therefore under the statute the plaintiff was not entitled to recover interest at the penal rate of 50 *per centum per annum*, nor any attorney's fees. The ap –

pellant's contention is, that unless the jury find for the plaintiff the *full amount* of his claim, *as presented in his written notice*, he is not entitled under the statute to the recovery of attorney's fees, nor to interest at the penal rate of 50 *per centum.* There is plausibility in this view if section two of the act aforesaid stood alone and could be considered as a separate independent provision of law; but when read and considered in connection with section three, as it must be in order to arrive at the true intent and meaning of the act, its untenableness becomes at once apparent. Section three evidently qualifies the apparent meaning conveyed by the language used in section two. Our construction of the two sections, when taken together, is that it is not necessary that the plaintiff shall recover the exact or full amount of damages as claimed in the written notice that he is required to give to the defendant as a prerequisite to his suit, in order to entitle him to the recovery of interest at the special statutory rate and to attorney's fees. The purpose of section two in requiring the plaintiff to give the written notice of his claim, is to afford the defendant company an opportunity for the period of thirty days to investigate the justness of the claim, and to permit it, without litigation, within that time, either to pay it in full, as presented, if found to be just and reasonable, or, as provided in section three, if it deems such claim unjust and unreasonable, as presented, to make tender of, or an offer to pay, such an amount thereof as it deems to be just and reasonable. If, after such tender or offer to pay, the plaintiff sues and recovers *no more damage* than he was tendered or offered before suit, then he can not recover either the special interest, nor any attorney's fees, nor any costs; but, on the contrary, in such a case, the defendant is entitled to judg-

ment in his favor for all of his reasonable costs, to be deducted from the damages found for the plaintiff.   In order to relieve itself of the liability to a recovery of the special statutory interest, and of attorney's fees and of the costs of the suit, the defendant company must have, before suit brought, made a tender or offer of payment to the plaintiff of some amount in settlement of his claim as presented in the written notice thereof, and the amount thus tendered or offered must be *nothing less* than the amount afterwards awarded by the judge or jury as the damage actually sustained. If the plaintiff at the trial shall recover any greater amount as his damages than was offered or tendered in settlement before suit, then he is entitled to the special statutory interest, and to attorney's fees and to his costs of the suit.   Where the plaintiff, as is shown to be the case here, gives the required written notice of his claim, and the defendant company ignores it and makes no tender or offer of any sum in settlement thereof before suit brought, then, under this statute, if the plaintiff is driven to suit and recovers any damage whatever he is entitled along with it to a recovery of the special statutory interest, and to his attorney's fees and to costs of suit.   In order to exempt itself from the recovery of the special interest, attorney's fees and costs the defendant company must, after it receives the written notice of the plaintiff's claim and before suit brought, have tendered or offered to pay to the plaintiff in settlement of his claim an amount *nothing less* than the sum afterwards awarded to the plaintiff as his damages, and this, whether the sum awarded as damages be equal to or less than the amount claimed in the prerequisite written notice.   In this case the plaintiff gave the required written notice of his claim ; the defendant company paid no attention

to it, and made no tender or offer of payment of any sum in settlement thereof; the plaintiff in his suit was, therefore, entitled to his recovery of the special statutory interest, and to his attorney's fee, and to his costs of suit, even though the jury awarded him as his damage a less amount than he claimed in the written notice served upon the defendant company before suit. There is no merit in the second and third assignments of error, to the effect that the court erred in permitting the plaintiff to testify orally as to the giving of the written notice of his claim; and in permitting the introduction in evidence of the copy retained by the plaintiff of the written notice so served. As to the first phase of this objection, we do not understand from the record that the plaintiff was permitted to testify orally as to the contents of the written notice that he gave, but only to establish the fact that he had given a written notice of his claim and the date upon which he so gave it. There was certainly nothing objectionable or improper in this, following it as he did with the introduction of the duplicate copy of the notice itself so served. The contention as to the second phase of this assignment is, that the *copy* of the notice of claim introduced was secondary evidence; that the original written document handed to the defendant or its agent was the best evidence of its contents, and that there must have been a notice served on the defendant by the plaintiff to produce such original at the trial, and a failure on the defendant's part thus to produce it in response to such notice, before secondary proof by copy was permissible. It is undoubtedly the general rule that where it is desired to prove the contents of a written instrument that is in the hands of the adverse litigant, the party desiring it, before he can introduce *secon-*

*dary* evidence, by copy or otherwise, of its contents, must lay a foundation for the introduction of such secondary evidence by giving to such adverse litigant possessor of the instrument, or to his attorney, a regular *notice to produce* the original, thereby making it appear that he has exhausted all means in his power to produce the original. 1 Greenleaf on Evidence (15th ed.), sec. 560. This general rule, however, is subject to *three exceptions* where such *notice to produce is not necessary* as a preliminary foundation to the introduction of such secondary evidence; which exceptions are thus stated by Mr. Greenleaf (2 Greenleaf Ev., 15th ed., Sec. 567 : " First, where the instrument to be produced and that to be proved are duplicate originals; for, in such case, the original being in the hands of the other party, it is in his power to contradict the duplicate original by producing the other, if they vary; second, where the instrument to be proved is *itself a notice*, such as a notice to quit, or notice of the dishonor of a bill of exchange; and, thirdly, where, from the *nature of the action*, the defendant has notice that the plaintiff intends to charge him with possession of the instrument, as, for example, in trover for a bill of exchange." The statutory notice of claim served by the plaintiff upon the defendant here clearly falls within the second class of these exceptions to the general rule where *no notice to produce* the original was necessary as a preliminary foundation for the introduction of secondary evidence as to its contents, even if it can not be said to fall within the scope of all three of said exceptions.

The defendant plead as a set-off to the plaintiff's claim, and proved at the trial, that the plaintiff had,

received, collected and appropriated to his own use a voucher for $22.50 that the defendant company sent to its agent at Marianna, that was made payable to, and that was intended for, another person than the plaintiff, but who had the same name and initials as the plaintiff, *viz:* J. W. Braxton, and that the defendant's agent had by mistake delivered said voucher to the plaintiff, when it was not really intended for him. The plaintiff at the trial admitted the receipt, collection and appropriation by him of this voucher for $22.50, but testified that on January 12th, 1889, he had an ox killed by the defendant's trains, that had been reported to the defendant company by its section boss, and also by himself, and that had been valued by him at $25; that shortly afterwards this voucher for $22.50 came, payable to J. W. Braxton—that was the way he always signed his name—and that as the company had been in the habit of paying him a little less than his claims, and as he knew of no other J. W. Braxton but himself, he thought this voucher was intended for him in settlement for said reported ox, and that he so applied it; that all other vouchers paid him by the defendant company for stock killed were made out just as that one was, payable to J. W. Braxton; that said ox, killed before said voucher came to him, was not included in this suit, and that he had never received any pay for it other than the proceeds of said voucher, and he considered it paid for in that way; that some eighty days afterwards the company notified him that said voucher was not intended for him, but for another J. W. Braxton, and demanded the return of the money, but that he refused under the circumstances to repay it, and that no suit was ever brought against him to recover it.

On this state of facts the court charged the jury as follows: "If you are satisfied from the evidence that there was due from the defendant to the plaintiff, at the time said money was paid, the sum of $22.50 for and on account of damages done by the defendant to the plaintiff for other stock killed, which is not sued for in this action, and which said sum of $22.50 was applied to the payment of his (the plaintiff's) claim for the killing of such other stock, you will not allow the set-off." This charge is assigned as error, and raises the question as to when money can be recovered back that has been paid by mistake. The law seems to be settled that money paid under a mistake of facts can not be reclaimed, where the plaintiff has derived a substantial benefit from the payment; nor, where the defendant received it in good faith in satisfaction of an equitable claim; nor where it was due in honor and conscience. 2 Greenleaf on Evidence (15th ed.), sec. 123; Norton vs. Marden, 15 Maine, 45; Moore vs. Eddowes, 2 Ad. & Ellis, (29 Eng. Com. Law), 133; Glenn vs. Shannon, 12 So. Car., 570; Foster vs. Kirby, 31 Mo., 496; Brisbane vs. Dacres, 5 Taunt., 143–163, S. C., 14 Eng. Rev. Reps., 718; Farmer vs. Arundel, 2 W. Blackstone, 824. The right to recovery in such cases turns upon the question as to whether the party receiving the money paid by mistake can, in good conscience, retain it. According to the plaintiff's evidence he had a just and legal claim against the defendant for an ox wrongfully killed by it, amounting to $25, and of which he had notified the defendant, demanding payment thereof. He received the voucher for $22.50 without fraud upon his part, but in good faith, believing it was his and that it was given him in payment of his claim, and he so appropriated it. His

31

claim seems never to have been settled otherwise. Under these circumstances we do not think that the retention of the money by him necessarily involved any smartings of good conscience, and there was no error in the quoted charge of the court.

The court gave the following charge: "If you are satisfied from the evidence that the plaintiff served a written notice upon an agent of the defendant in this county, within one year from the time of the alleged damage in this suit, and that the defendant had not made an offer or tender of payment of any portion of said claim to said plaintiff within thirty days after the service of said written notice, you will find for the plaintiff in addition to the damages sustained by the killing of the stock as proven 50 *per cent. per annum* from the time of the service of said written notice, and such attorney's fees for conducting this suit as are proven to be reasonable and just." The court also refused to give the following charge requested by the defendant: "If you believe from the preponderance of the evidence that after plaintiff's stock was killed by defendant's trains the plaintiff did give notice and present his claim in writing therefor to a station agent of defendant in this county, and that defendant failed for thirty days to pay said claim, and that such claim as presented was reasonable and just, then the plaintiff is entitled to the interest and attorney's fees allowed by the statute; but if you believe said claim as presented was not reasonable and just, then you will not allow plaintiff the interest and attorney's fees as aforesaid." The giving of the first, and the refusal to give the last, of these charges is also assigned as error. From our construction of the statute as already given it becomes apparent that the court did not err in

the charge given, or in the refusal to give the charge requested.

The verdict of the jury is amply sustained by the evidence in the cause, and, finding no errors of law, the judgment appealed from is affirmed.