ATLANTIC COAST LINE RAILROAD COMPANY, A CORPORATION, *Plaintiff in Error,* v. B. P. COACHMAN, *Defendant in Error.*

1. The provisions of Chapter 5618, Acts of 1907, are not confined to railroads alone, but include all common carriers, thus making a classification in accordance with the requirements of the constitution as to due process of law and the equal protection of the laws.

2. The statute, Chapter 5618, Acts of 1907, may not be said to offend against the equal protection clause of the State constitution or the inhibition of Article XIV of the Federal constitution merely because it permits a recovery of interest and attorneys' fees by the plaintiff shipper if he succeeds, and secures no such right to the carrier in the event it prevails in the suit.

3. It is not necessary that a statute passed in the exercise of the police power shall apply equally and uniformly to all persons of the State, but it is sufficient to satisfy the constitutional requirements of equal protection of the law if it applies equally and uniformly to all persons similarly situated.

4. Since railroads are created by the State for quasi-public purposes and are, therefore, affected by a public interest, the

A. C. L. R. R. Co. v. Coachman—Syllabus.

legislature may to the extent of such interest regulate and control them except in so far as it is restricted by the contract obligation imposed by the charter or statute under which the companies are incorporated, and subject of course to the constitutional restrictions against the impairment of vested rights, denial of the equal protection of the laws or due process of law.

5.    The police power of a State embraces regulations designed to promote the public convenience or the general prosperity or the public welfare.

6.    The subject-matter of Chapter 5618, Laws of 1907, providing for a recovery of fifty per cent interest and reasonable attorneys' fees from common carriers for failure to pay claims for any freight or express lost or damaged within sixty days meets the test of constitutionality.

7.    A liberal rule of construction should be applied when the constitutionality of a statute is questioned and every reasonable doubt should be resolved in favor of the validity of the statute assailed. The court should, in deference to the legislative department of the government, uphold a statute allged to be unconstitutional, unless it is clearly made to appear beyond a reasonable doubt that the statute is unconstitutional.

8.    This court cannot say beyond a reasonable doubt that the penalty of fifty per cent per annum interest on the principal sum of a claim for freight or express lost or damaged by a common carrier allowed by the provisions of Chapter 5618, Laws of 1907, for failure to pay said claim within sixty days from its filing with or presentation to said common carrier is so exorbitant and unreasonable as to render the statute unconstitutional.

9.    The reasonableness of a penalty for the failure to perform a public duty is primarily for the judgment of legislators, and courts will not interfere with the discretion of the legislature in this regard as long as it keeps within the fair and reasonable scope of its powers. If such liabilities be considered inexpedient or illogical the court cannot say the legislature had transcended its power.

10. Under a plea of not guilty, the contention that the testimony does not show that the consignee of live stock was the agent of the plaintiff, as alleged to be in the declaration, cannot be considered, as this allegation is merely one of the facts stated in the inducement of the declaration, and such fact was not put in issue by the plea.

11. The action of the referee in refusing to allow the defendant to file additional pleas during the trial of the case, if error, was without injury, as the defendant was permitted to introduce evidence to support the matters set up in the additional pleas proffered.

12. In a suit against a railroad company for injuries to live stock the question whether one of the animals was thrown down in the car and injured by the negligent moving of the car, is one of fact for the referee acting as the jury.

13. Where the shipper and the carrier fairly enter into a contract whereby the parties agree on a valuation of the property, with a rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, such contract will be upheld as simply fixing the rate of freight and liquidating the damages, a proper and lawful mode of securing a true proportion between the amount for which the carrier may be responsible and the freight he receives, and also of protecting himself against extravagant and fanciful valuations.

14. In the absence of evidence to the contrary, it is to be assumed that property accepted by a carrier for transportation is taken under the responsibility cast upon it by the common law, except as modified by statute; and, if lost under circumstances rendering the carrier liable by the general rule of law, it must respond, unless it can show that there was a contract, or a special acceptance equivalent to a contract, which exempts it from the ordinary liability of common carriers. The transaction must amount to a contract on the subject, wherein the minds of the parties meet as in the making of other contracts.

15. Contracts limiting the common law liability of carriers are not favored by the courts. Exemption from liability will not be presumed, but must be found clearly expressed in the contract.

16. If by a rule of the carrier or a published schedule of tariff rates its liability is fixed by the rate of freight paid, and for the purpose of obtaining a certain rate of freight the shipper reports to the carrier a valuation on live stock shipped, having notice or actual knowledge of these terms at the time or before the delivery of the stock by him to the carrier to be transported and assenting thereto, the liability of the carrier is fixed by such agreement. If, however, the shipper has no notice of the rule or tariff rates of the carrier and does not assent thereto, the rule is different.

17. Under the rules and regulations of the Railroad Commission of this State prescribing the maximum valuation in the shipment of horses and mules of $75 each for a certain released rate, and for every increase of one hundred per cent or fraction thereof in valuation there shall be an increase of fifty per cent in rate, the shipper has the option to ship at his own or the carrier's risk, and he will not be bound, in the limit of his recovery, by the payment of the release rate unless it be show that he knew the rate paid was a released rate and there was a fair meeting of the minds of the shipper and the carrier that, by payment of the released rate, the recovery of the shipper would be limited to a certain maximum sum clearly agreed upon.

18. Where the evidence is not so clear as to forbid any other inference than that the shipper consented to a specified valuation, the question must be left to the referee's determination acting as a jury in a trial of the case.

19. The maximum sum allowed by the statute as a reasonable attorney's fee in a suit against a carrier upon a claim for freight or express lost or damaged where the carrier has failed to pay said claim in sixty days after its presentation is fifteen per cent on any amount recovered greater than the sum of one hundred dollars. The amount recovered means the amount of the claim recovered and not that amount plus the fifty per cent per annum interest also allowed by the statute.

This case was decided by the court En Banc.

Writ of error to the Circuit Court for Suwannee County.

The facts in the case are stated in the opinion of the court.

*Doggett & Smith* and *J. B. Johnson,* for Plaintiff in Error;

*Roberson & Small* and *F. L. Rees,* for Defendant in Error.

PARKHILL, J.—The defendant in error sued the plaintiff in error in the Circuit Court for Suwannee County for loss and damage occasioned by the railroad company in the negligent and careless transportation of horses and mules belonging to the plaintiff.

By agreement of the parties, the cause was referred to J. F. Harrell, Esquire, a practicing attorney of the court, for trial.

The finding of the referee, upon a plea of not guilty, was as follows:

"I, J. F. Harrell, to whom the above stated cause was heretofore referred as referee by the judge of the Circuit Court in and for Suwannee County, Florida, for trial, as such referee do hereby find upon the evidence taken before me for the plaintiff, B. P. Coachman, and assess his damage at $450.00. I further find that plaintiff is entitled to the further sum of $225.00, or fifty per cent interest on the above amount under the statute.

I further find that the plaintiff is entitled to the further sum of $200.00 as attorney's fees."

Afterwards, in accordance with an order made by the

referee on a motion for a new trial, the plaintiff entered a remittitur for the sum of $98.75. Thereupon a final judgment for $776.25 was entered by the referee in favor of the plaintiff and against the defendant.

On writ of error, the defendant below contends that the statute authorizing the award of interest and attorney's fees herein is unconstitutional, because it offends against the equal protection clause of the State Constitution and the inhibition of Article XIV of the Constitution of the United States.

The provisions of Chapter 5618, Laws of 1907, under which recovery of interest and attorney's fees herein was had, are as follows:

"Section 1. That it shall be the duty of all common carriers operating within this State, and they are hereby required when any person files with, or presents to, them or any station agent of said common carrier to be filed, his claim for any freight or express lost or damaged by said common carrier, or for any over-charge made by such common carrier on any freight or express, to pay the said claim within sixty days from its filing with, or presentation to, said common carrier or any station agent of such common carrier.

Sec. 2. That should any common carrier fail to comply with the provisions of section one (1) of this act, then the said common carrier making such failure shall be liable to the claimant for the amount of his claim and fifty per cent. per annum interest on the principal sum of said claim from the date of the filing of the same with, or presentation of the same to, the common carrier or any station agent of such common carrier, and when the said claimant shall bring suit and recover judgment for his claim against said common carrier, he shall be allowed the said fifty per cent per annum, in addition to the principal sum of said claim, and the same shall be allowed in

the verdict giving him judgment; provided, however, that the claimant shall not recover and have judgment for the said fifty per cent per annum, unless he recovers judgment for a sum which fixes the principal sum of said claim at an amount greater than the amount which said common carrier had offered and tendered to the claimant in settlement of his claim before the expiration of said sixty days in which the said common carrier is required to pay such claims under the provisions of section one (1) of this act.

Sec. 3.    That any common carrier who fails to comply with the provisions of section one (1) of this act, shall, in the event that the claimant shall prevail in an action to recover on his claim, be liable for a reasonable attorney's fee and it shall be the duty of the court to allow the claimant such reasonable attorney's fee, which shall be fixed by the court, not to exceed fifteen dollars, if the amount recovered does not exceed one hundred dollars, and not to exceed fifteen per cent on any amount recovered greater than the sum of one hundred dollars."

In Seaboard Air Line Ry. v. Simon, 56 Fla. 545, 47 South. Rep. 1001, we held that in providing for the regulation of settlement for goods lost in transit by "any person, firm or corporation operating any *railroad* in this State," a subject applicable alike to all common carriers of goods, Chapter 5424, Acts of 1905, made a separate classification of persons, firms or corporations operating railroads that is not based upon legal or natural, practical and reasonable differences in conditions with reference to the subject regulated, and violated in this respect the constitutional guaranties of due process of law and the equal protection of the laws.    To the like effect is the holding of the Supreme Court of the United States in Gulf, C. & S. F. Ry. Co. v. Ellis, 165 U. S. 150, 41 L. Ed. 666, 17 Sup. Ct. Rep. 255.

The provisions of Chapter 5618 Acts of 1907, however,

are not levelled against railroads alone, but include all common carriers thus making a classification in accordance with the requirements of the constitution as to due process of law and the equal protection of the laws.

The statute will not be said to offend against the equal protection clause of the State Constitution or the inhibition of Article XIV of the Federal Constitution merely because it permits a recovery of interest and attorneys fees by the shipper if he succeeds, and secures no such right to the carrier in the event it prevails in the suit. The shipper and the carrier are not similarly situated. The shipper assumes the discharge of no duty to the public. He injures no one. And so the statute applies to the carrier—to all carriers similarly situated,—and places its penalty or burden upon the carrier and not upon the shipper, because the carrier only is within the sphere of its operation. This court, therefore, has held, as not in conflict with the State or Federal Constitutions, statutory provisions for attorneys fees when judgment is rendered in favor of the plaintiff in the enforcement of mechanics' liens, Dell v. Martin, 41 Fla. 221, 26 South. Rep. 188, S. C. 45 L. R. A. 201; also, in case of recovery for live stock killed, Jacksonville, T. & K. W. Ry. Co. v. Prior, 34 Fla. 271, 15 South. Rep. 760; also, in suits upon policies issued by insurance companies, Tillis v. Liverpool & L. & G. Ins. Co., 46 Fla. 268, 35 South. Rep. 171; Hartford Fire Ins. Co. v. Redding, 47 Fla. 228, 37 South. Rep. 62.

It is not necessary that a statute passed in the exercise of the police power shall apply equally and uniformly to all persons of the State, but it is sufficient to satisfy the constitutional requirement of equal protection of the law if it applies equally and uniformly to all persons similarly circumstanced. Wright v. Hart, 182 N. Y. 330, 75 N. E. Rep. 404, 2 L. R. A. (N. S.) 338.

We think, too, the subject matter of this statute is

within the power of the legislature, or comes within the limits of constitutionality.

From considerations of public policy, the differences between the private and common carrier have led to rules respecting the duty of the latter which do not apply to the former. The common or public carrier of goods exercises a sort of public office, and his business, therefore, is affected with a public interest. Munn v. People of Illinois, 94 U. S. 113, 24 L. Ed. 77.

Since railroad companies are created by the State for quasi-public purposes and are thereby affected by a public interest, the legislature may to the extent of such interest regulate and control them except in so far as it is restricted by the contract obligation imposed by the charter or statute under which the companies are incorporated, and subject of course to the constitutional restrictions against the impairment of vested rights, denial of the equal protection of the laws, or due process of law.

The police power of a State embraces regulations designed to promote the public convenience or the general prosperity or the public welfare as well as those designed to promote the public safety or the public health. Chicago B. & Q. R. Co. v. People of State of Illinois ex rel. Drainage Com'rs, 200 U. S. 561, 50 L. Ed. 596, 26 Sup. Ct. Rep. 341; Lake Shore & M. S. Ry. Co. v. State of Ohio, 173 U. S. 285, 43 L. Ed. 742, 19 Sup. Ct. Rep. 465.

The police power includes legislative authority to make regulations reasonably necessary or conducive to the public welfare. State ex rel. Milwaukee Medical College v. Chittenden, 127 Wis. 468, 107 N. W. Rep. 500.

In speaking of the provisions of the Texas statute whereby life insurance companies failing to pay a loss within a time specified in the policy after demand therefor are made liable to the payment of a certain per cent damages on the amount of the loss, and all reasonable

attorneys fees for the prosecution and collection of such loss, McCormick, J., in Merchants' Life Ass'n v. Yoakum, 98 Fed. Rep. 251, said: "The purpose of this statute is not to compel the payment of debts.  *  *  *  The obvious purpose of the act is to secure a righteous degree of care in writing policies of insurance.  To enforce the exercise of this righteous care on the part of the very strong in contracting with the weaker and less learned * * * would seem to be within the legislative power." See also Fidelity Mutual Life Ass'n v. Mettler, 185 U. S. 308, 46 L. Ed. 922, 22 Sup. Ct. Rep. 662; Fidelity & Casualty Co. of New York v. Dorough, 107 Fed. Rep. 389, 46 C. C. A. 364; Washington Life Ins. Co. v. Gooding, 19 Tex. Civ. App. 490, 49 S. W. Rep. 123; New York Life Ins. Co. v. Orlopp, 25 Tex. Civ. App. 284, 61 S. W. Rep. 336.

In Atchison, T. & S. F. R. Co. v. Matthews, 174 U. S. 96, 43 L. Ed. 909, 19 Sup. Ct. Rep. 609, the court held the provision of the Kansas statute requiring a reasonable attorney's fee for the plaintiff to be allowed and made a part of the judgment on a recovery against a railroad company for damages from fire caused by the operating of its trains, is in the nature of a police regulation designed to enforce care on the part of railroad companies to prevent the escape of fire from their moving trains, which subjects the property of adjacent owners to peculiar hazard, and has a reasonable relation to the object sought to be accomplished, although the statute imposes no specific duty by way of precaution; and the provision is not in violation of the fourteenth constitutional amendment, as an arbitrary classification of suitors, which deprives those affected of the equal protection of the laws.  The Supreme Court of the United States, in speaking of the purpose of the statute, said: "Its monition to the railroads is not, pay your debts without suit or you will, in addition, have to pay attorney's fees; but rather, see to

it that no fire escapes from your locomotives, for if it does you will be liable, not merely for the damage it causes, but also for the reasonable attorney's fees of the owner of the property injured or destroyed." See also St. Louis & S. F. Ry. Co. v. Mathews, 165 U. S. 1, 41 L. Ed. 611, 17 Sup. Ct. Rep. 243; Grissell v. Housatonic R. Co., 54 Conn. 447, 9 Atl. Rep. 137, 1 Am. St. Rep. 138; Lumbermen's Mut. Ins. Co. v. Kansas City, Ft. S. & M. R. Co., 149 Mo. 165, 50 S. W. Rep. 281; Choctaw, O. & G. R. Co. v. Alexander, 7 Okl. 591, 54 Pac. Rep. 421.

In Porter v. Charleston & S. Ry. Co., 63 S. C. 169, 41 S. E. Rep. 108, 90 Am. St. Rep. 670, the court held that 22 St. at Large, p. 443, of South Carolina providing a penalty on common carriers for failure to pay or to refuse to pay damages on freight within 60 days is not in violation of the Const. U. S. Amendment 14, as denying equal protection of law. See also Frasier v. Charlestown & W. C. Ry, 73 S. C. 140, 52 S. E. Rep. 964.

And so, the Supreme Court of the United States, in upholding the constitutionality of a statute providing that every claim for loss or damage to property in possession of a common carrier shall be adjusted and paid within a specified time, and if not then paid the carrier should be liable to a penalty, shows that "the object of the statute was not to penalize the carrier for merely refusing to pay a claim within the time required, whether just or unjust, but the design was to bring about a reasonably prompt settlement of all proper claims, the penalty, in case of recovery in court, operating as a deterrent of the carrier in refusing to settle just claims; and as compensation of the claimant for the trouble and expense of the suit which the carrier's unreasonable delay and refusal made necessary." Seaboard Air Line Ry. v. Seegers, 207 U. S. 73, 52 L. Ed. 108, .. Sup. Ct. Rep. ... "Further," the court remarked in that case, "it must be remembered

that the purpose of this legislation is not primarily to enforce the collection of debts, but to compel the performance of duties which the carrier assumes when it enters upon the discharge-of its public functions."

One of these duties which the carrier assumes is to carry safely and deliver goods intrusted to it for carriage. Whenever a railroad company receives livestock and undertakes to transport the same for hire, such company assumes the relation of a common carrier and is held to a very strict accountability for the loss thereof, such accountability being independent of contract and imposed by law on grounds of public policy. Summerlin v. Seaboard Air Line Ry, 56 Fla. 687, 47 South. Rep. 557. By providing for the increase of damages where the loss or injury results from the want of care and the negligence of the carrier in transportation of freight, the statute causes the carrier to exercise more care in the handling of the freight by its servants and agents. The legislature is presumed to have full knowledge of the conditions within the State and to intend no arbitrary selection or punishment, but to subserve merely the general interest of the public. Atchison, T. & S. F. R. Co. v. Matthews, 174 U. S. 96, 43 L. Ed. 909, 19 Sup. Ct. Rep. 609.

This statute designs, also, to bring about a reasonably prompt settlement of all proper claims, and a reasonably speedy trial thereon, for the statute is so framed that the penalty of fifty per cent per annum interest which acts as a deterrent of the carrier in refusing to settle just claims, becoming included in the verdict, ceases to run thereafter, and the judgment therefor only bears eight per cent per annum. The statute tends to avoid expensive and annoying delays in litigation. "The corrosion of time acts on the causes of action, and wears out justice." These delays become annoying to lawyers, expensive and damaging to litigants, and, affecting as they must do

large numbers of people in all parts of the State, become the source of much irritation and the cause of much friction between the carriers and the people, resulting sometimes in drastic legislation harmful to the carriers. Giving full force to the presumption that the legislature had full knowledge of the conditions within this State, we may well conclude that this statute was really designed to accomplish a legitimate public purpose. Legislation of this nature will tend to lessen litigation, prevent a multiplicity of suits, save to the State and litigants expenses thereof, remove a source of friction and unrest in the State, bring the shipper and the carrier to walk hand in hand, promote the public welfare and the good order of the people, increase the industries of the State, develop its resources and add to its wealth and prosperity—results devoutly to be wished by all lovers of good government whether on or off the bench. "Regulations for these purposes," said the Supreme Court of the United States, in Barbier v. Connolly, 113 U. S. 27, 28 L. Ed. 923, 5 Sup. Ct. Rep. 357, "may press with more or less weight upon one than upon another, but they are designed, not to impose unequal or unnecessary restrictions upon any one, but to promote, with as little inconvenience as possible, the public good. Though, in many respects, necessarily special in their character, they do not furnish just ground of complaint if they operate alike upon all persons and property under the same circumstances and conditions. Class legislation, discriminating against some and favoring others, is prohibited, but legislation which, in carrying out a public purpose, is limited in its applications, if within the sphere of its operations it affects alike all persons similarly situated, is not within the amendment." Seaboard Air Line Ry v. Seegers, *supra;* Missouri Pac. Ry. Co. v. Humes, 115 U. S. 512, 6

Sup. Ct. Rep. 110; Thomas v. Hannibal & St. Joseph R. R. Co., 82 Mo. 538.

Verily, the subject matter of this statute meets the test of constitutionality—the test being whether it has some relation to the public welfare, and whether such is, in fact, the end sought to be attained. Iler v. Ross, 64 Neb. 710, 90 N. W. Rep. 869, 97 Am. St. Rep. 676.

We know that there are limits beyond which legislation and penalties may not go, even in cases where the classification is concededly legitimate and the subject matter admittedly proper. It remains to be seen then whether the statute under review has gone beyond that limit in the nature and method of the regulations.

It requires no argument to show that the limit of time, sixty days, fixed by the statute for the investigation and settlement of these claims is reasonable. There is no conflict either in the authorities on this point.

Now, as to the reasonableness or legality of the penalty imposed for a failure to pay the claim within sixty days. It will be observed that the penalty imposed is not fifty per cent of the amount of the claim. The penalty is *interest* on the claim—interest *at the rate* of fifty per cent per annum, or a fraction over four per cent per month, not until the claim be paid, but interest only until a trial is had and judgment for the plaintiff is rendered, and thereafter the judgment only bears eight per cent per annum interest until paid. If the carrier will meet the plaintiff half way in seeking a speedy trial of the cause, the payment of this penalty may be avoided within about three months on claims within the jurisdiction of our inferior courts and about four to six months on claims in the Circuit Courts. Thus the penalty recoverable on a claim for $100, if collected by suit in three months would be only $12.50 interest; or, if the

$100 claim were collected in six months, the penalty recovered would be only $25. And yet the courts have upheld the constitutionality of statutes making life insurance companies failing to pay a loss within the time specified in the policy after demand made therefor liable to the payment of 12 per cent damages on the amount of the loss and all reasonable attorney's fees. Merchants' Life Ass'n v. Yoakum, 98 Fed. Rep. 251, 39 C. C. A. 56. Under such a statute the penalty imposed would be $12.00 on a $100 policy, or within fifty cents of the amount recoverable under our statute in a reasonable time for the collection of the claim by suit.

In Harp v. Fireman's Fund Ins. Co., 130 Ga. 726, 61 S. E. Rep. 704, 14 Am. & Eng. Ann. Cas. 299, and comprehensive note thereto on p. 301 the court held that a statute providing for the recovery of *25 per cent damages* and attorney's fees against insurance companies is not violative of the constitution of the State or the United States. Under this statute, on a $100 claim, the plaintiff would be allowed $25.00, while under our statute he would recover the same amount only if the suit were tried and judgment rendered in six months after refusal to pay the claim.

This court in Pensacola & A. R. Co. v. Braxton, 34 Fla. 471, 16 South. Rep. 317, has sustained the recovery under Section 2 of Chapter 3742, Acts of 1887, of interest at the rate of fifty per cent per annum in addition to the actual damages together with attorney's fees upon the failure of railroad companies to pay, within 30 days, for the cattle killed by them, where the companies fail to fence their tracks as required by the statute. See also Jacksonville, T. & K. W. Ry Co. v. Prior, 34 Fla. 271, 15 South. Rep. 760.

In 1891, by Chapter 4069 the legislature authorized the recovery of double damages and attorneys' fees from the

railroad companies failing to pay claims, within 30 days, for cattle killed when there was a failure to fence their tracks.

In 1899, by section 5 of Chapter 4706, again the legislature increased the penalty for a failure to pay within 30 days the claim for cattle killed where the railroad track was not fenced, to double the value of the animal killed and for attorneys' fees, instead of fifty per cent per annum interest, and such remains the penalty to this day (section 2871, General Statutes), the time for payment of the claim being enlarged to sixty days.

If the question comes before us under this statute, will this court say that the penalty of double damages awarded thereby is exorbitant and excessive, because forsooth it at one time was only 50 per cent per annum interest? Certainly not, for this court has already said in Florida E. C. R. Co. v. Hazel, 43 Fla. 263, 31 South. Rep. 272, while considering the act of 1891, that there can be no doubt "it would be competent for the legislature to provide the means for its enforcement, and in doing so to authorize the recovery of double damages and attorneys' fees."

Under the statute and the decision of this court if the railroad company fail to pay within 60 days a claim of $100 for stock killed by it, when the track is not fenced, the owner of the property may recover $100 in addition to the actual value of the property, besides attorneys' fees.

Under the statute sued upon here, if the railroad company fail to pay within 60 days, a claim of $100 for freight, it may be stock, lost or damaged (killed perhaps) by it, the owner of the property may recover, after six months delay for a trial the value of the property, plus 50 per cent per annum, or $25, besides attorneys' fees.

Thus we have a recovery of a penalty of $100 under one statute as against $25 under this statute. It may be that a much larger recovery is proper under the fencing statute than under the freight statute, but if $100 recovery be proper and reasonable under the one statute, we fail to see how we may say beyond a reasonable doubt that a recovery of $25 here is exorbitant and unreasonable so as to make the statute unconstitutional.

In Missouri, K. & T. Ry Co. v. Board of Comm'rs of Labette County, 9 Kan. App. 545, 59 Pac. Rep. 383, the court held the statute imposing a penalty of 50 per cent per annum interest for a refusal to pay taxes and bringing injunction proceedings, instead of paying the taxes under protest did not contravene the constitution of Kansas, or the Fourteenth Amendment of the Constitution of the United States.

In Iowa, by statute common carriers are made liable for damages occasioned to baggage or other property of travellers through careless or negligent handling thereof and compensation of not less than three dollars for every day's detention to travellers in consequence of such damage and necessary delay in suit for same. Anderson v. Toledo, W. & W. R. R. Co., 32 Iowa 86.

In Kingsbury v. Missouri, K. & T. Ry Co., 156 Mo. 379, 57 S. W. Rep. 547, the court held to be constitutional a statute authorizing a recovery of *double damages* against railroad companies sustained by reason of *stock entering adjoining lands* from the right of way in consequence of insufficient fences.

In Gorman v. Pacific R. R., 26 Mo. 441, text 450, single damages only were recoverable, afterwards double damages were authorized by statute.

Sometimes statutes authorize four times the actual damages to be recoverable.

How may this court say that the penalty imposed by this statute is not reasonably necessary to accomplish the purposes of the statute, and that this statute is unconstitutional for that reason? What is to guide us?

The fixing of a rate of interest by the legislature is a matter of judgment. The rate of interest where no public duty is involved is necessarily an arbitrary one. It is now eight per cent per annum. The legislature could make it ten or twelve per cent tomorrow. May not the legislature impose a penalty of twenty-five per cent for the failure of the public duty here involved, and if experience and the conditions demonstrate that it does not accomplish the purpose of the statute, may not the legislature increase the rate of interest, or penalty, within the bounds of reason, until the result arrived at be accomplished? Whether for this reason we do not know, but the fact is the rate of interest was fixed at twenty-five per cent by the statute of 1905, while by the statute of 1907, and again by the statute of 1909, the rate is fixed at fifty per cent.

In Western Union Tel. Co. v. State of Indiana, 165 U. S. 304, 41 L. Ed. 725, 17 Sup. Ct. Rep. 345, in speaking of the amount of the penalty of 50 per cent (not fifty per cent per annum) for non-payment of taxes by a telegraph company, the Supreme Court of the United States, speaking through Mr. Chief Justice FULLER, said: "The amount of the penalty was a matter for the legislature to determine in its discretion, and the Supreme Court refers to the imposition of penalties in other instances under the statutes of Indiana, varying according to the particular subjects of taxation, apparently calculated to operate with quite as much harshness."

Police regulations may not be declared void because deemed contrary to natural justice and equity, but only because they violate a constitutional right. State v.

Richcreek, 167 Ind. 217, 77 N. E. Rep. 1085, 5 L. R. A. (N. S.) 874.    Courts will certainly not interfere with the discretion of the legislature in its exercise of the power to provide for the public welfare, as long as it keeps within the fair and reasonable scope of its powers. Brady v. Mattern, 125 Iowa 158, 100 N. W. Rep. 358, 106 Am. St. Rep. 291.

In Hayes v. Walker, 54 Fla. 163, 44 South. Rep. 747, this court said: "A liberal rule of construction should be applied when the constitutionality of a statute is questioned and every reasonable doubt should be resolved in favor of the validity of the statute assailed.    The court should, in deference to the legislative department of the government, uphold a statute alleged to be unconstitutional, unless it is clearly made to appear beyond a reasonable doubt that the statute is unconstitutional."    In the same case, this court held: "Classifications for purposes of legislation may be made with reference to similarity of situation, circumstances, requirements and convenience to best subserve the public interest.    The test as to the validity of classification for purposes of legislation is good faith, not wisdom."    In Seaboard Air Line Ry v. Simon, 56 Fla. 545, text 551, 47 South. Rep. 1001, citing Billings v. Illinois, 188 U. S. 97, 23 Sup. Ct. Rep. 272, this court said: "Great latitude should be accorded to the legislature in the exercise of its proper powers."

In Judy v. Thompson, 156 Ind. 533, 60 N. E. Rep. 270, the court said: "The penalty in such cases is imposed upon grounds of public policy.    The motives of the legislature are not open to judicial inquiry.

In Missouri Pac. Ry Co. v. Humes, 115 U. S. 512, 6 Sup. Ct. Rep. 110, quoted with approval in St. Louis & S. F. Ry Co. v. Mathews, 165 U. S. 1, 17 Sup. Ct. Rep. 243, Mr. Justice FIELD, speaking for the court, said: "If the laws enacted by a state be within the legitimate

sphere of legislative power, and their enforcement be attended with the observance of those general rules which our system of jurisprudence prescribes for the security of private rights, the harshness, injustice and oppressive character of such laws will not invalidate them as affecting life, liberty or property without due process of law."

In Trice v. Hannibal & St. Joseph R. R. Co., 49 Mo. 438, the court said: "Even if we considered such liabilities to be inexpedient or illogical, we could not say that the legislature had transcended its power."

In Illinois Cent. R. Co. v. Crider, 91 Tenn. 489, 19 S. W. Rep. 618, the court said: "The measure of the damages for failure to fence, as well as the disposition of recovery in excess of actual compensation, was wholly within the legislative discretion."

In considering the reasonableness of this legislation, it must be observed that the fifty per cent interest provided for by this statute is not to be collected in all cases, even though the carrier refuses to pay the claim within sixty days. The claimant may not recover the interest *at all* "unless he recovers judgment for a sum which fixes the principal sum of said claim at an amount greater than the amount which said common carrier had offered and tendered to the claimant in settlement of his claim before the expiration of said sixty days in which the said common carrier is required to pay such claims under the provisions of section one (1) of this act." This provision is apparently designed to prevent the making of excessive claims. The statute may not be said to be unconstitutional because it puts the burden upon the carrier to prove an amount equal to its tender or offer, instead of making the recovery of the interest conditioned upon the proof by the plaintiff of the full amount of his claim. This would be a mere matter of detail or expediency or

wisdom—not a matter of power. As said by the Supreme Court of the United States in Seaboard Air Line Ry v. Seegers, *supra,* "the matter is one peculiarly within the knowledge of the carrier. It receives the goods and has them in its custody until the carriage is completed. It knows what it received and what it delivered. It knows what injury was done during the shipment, and how it was done. The consignee may not know what was in fact delivered at the time of the shipment, and the shipper may not know what was delivered to the consignee at the close of the transportation. The carrier can determine the amount of the loss more accurately and promptly and with less delay and expense than any one else."

In Pensacola & A. R. Co. v. Braxton, 34 Fla. 471, 16 South. Rep. 317, this court, considering the statute allowing recovery of fifty per cent per annum damages for cattle killed by railroad companies, and for attorney's fees, said: "Our construction of the two sections, when taken together, is that it is not necessary that the plaintiff shall recover the exact or full amount of damages as claimed in the written notice that he is required to give to the defendant as a prerequisite to his suit, in order to entitle him to the recovery of interest at the special statutory rate, and to attorney's fees."

The statute does not fix an arbitrary sum for attorney's fees, but the court may allow only a reasonable attorney's fee, not exceeding a maximum allowance on the amount recovered, if the claimant is entitled thereto.

In view of the safeguards thrown around the collection of the penalty, in view of the differences in human judgment, remembering that this question is one primarily for the judgment of legislators who live in and represent all parts of the State and who must necessarily know the conditions therein upon this matter and what penalty

is necessary to cause a compliance with the provisions of section one of the statute, we are not prepared to say, beyond a reasonable doubt, that the penalty is so exorbitant and unreasonable as to render the statute unconstitutional; on the contrary, the regulations herein appear to be reasonably necessary and conducive to the public welfare.

The trial was had upon the plea of not guilty, and the contention that the testimony does not show that S. S. Coachman, consignee, was the agent of the plaintiff as alleged to be in the declaration, cannot be considered under this plea. This allegation is merely one of the facts stated in the inducement, and such fact was not put in issue by the plea of not guilty. Gainesville & Gulf R. Co. v. Peck, 55 Fla. 402, 46 South. Rep. 1019, and the cases cited; also Atlantic Coast Line Ry Co. v. Partridge, 58 Fla., 153, 50 South. Rep. 634.

The defendant complains that the referee refused to allow it to file additional pleas during the trial of the case. The action of the referee, if error, was without injury, as the defendant was permitted to introduce evidence to support the matters set up in the additional pleas. These pleas appear to have been regarded by the trial court, and for the purposes of this case have been considered here, as equivalent to the general issue. Gainesville & Gulf R. Co. v. Peck, 55 Fla. 402, 46 South. Rep. 1019.

For the same reason, we cannot consider the contention that the plaintiff failed to give notice in writing to some officer or agent of the company before moving the stock.

As to the contention that the shipper agreed to load and unload the stock at his own risk and that the injury was due to improper loading, it may be said that the evidence on this point is conflicting, but there is evidence

that the stock was loaded properly and this contention is not sustained.

Whether one of the animals was thrown down in the car and injured by the negligent manner of moving the car is a question for the referee acting as the jury, and on the evidence before us we do not see any reason for reversing his finding thereon. 2 Hutchinson on Carriers, Paragraph 639; Illinois Cent. R. Co. v. Light, 39 Ill. App. 530.

It is contended that the plaintiff is limited in the amount of his recovery, if entitled to recover at all, to the maximum sum of $75 each as the stipulated value of his horses and mules; and that the finding of the referee is in excess of that amount.

A common carrier of goods cannot legally stipulate for exemption from liability for losses occasioned by its own negligence, and all stipulations for exemption, whether gross or ordinary, are ineffectual. Summerlin v. Seaboard Air Line Ry, 56 Fla. 687, 47 South. Rep. 557. The shipper, however, by his representations or agreements as to the value of the goods, may estop himself from recovering their full value, notwithstanding they are lost through the carrier's negligence. This would be the case when the shipper has placed upon his goods a specific value, the carrier accepting the same in good faith, as their real value, the rate of freight being fixed in accordance therewith. Such a contract, fairly entered into, whereby the shipper and the carrier agree on a valuation of the property carried with a rate of freight based on condition that the carrier assumes liability only to the extent of the agreed valuation simply fixes the rate of freight and liquidates the damages, and will be upheld as a proper and lawful mode of securing a true proportion between the amount for which the carrier may be responsible and the freight he receives and also of protecting himself against extravagant and fanciful valuations.

Atlantic Coast Line R. Co. v. Dexter & Connor, 50 Fla. 180, 39 South. Rep. 634; Hart v. Pennsylvania R. Co., 112 U. S. 331, 5 Sup. Ct. Rep. 151; Harvey v. Terre Haute & Indianapolis R. Co., 74 Mo. 538, 6 Am. & Eng. R. Cas. 293.

In the absence of evidence to the contrary, it is to be assumed that property accepted by a carrier for transportation is taken under the responsibility cast upon it by the common law, except as modified by statute; and, if lost under circumstances rendering the carrier liable by the general rule of law, it must respond, unless it can show that there was a contract, or a special acceptance equivalent to a contract, which exempts it from the ordinary liability of common carriers. Moore on Carriers, p. 298. The transaction must amount to a contract on the subject, wherein the minds of the parties meet as in the making of other contracts. Baltimore & O. R. Co. v. Hubbard, 72 Ohio St. 302, text 316, 74 N. E. Rep. 214.

If the agreement is in writing it must be expressed in such manner and form as to be understood by a person of average intelligence, or if not so expressed it must be shown to have been explained to the shipper, unless he has such knowledge as will enable him to understand the meaning of the writing. Carpenter v. Baltimore & O. R. Co.,    Del.   , 64 Atl. Rep. 252. See the valuable and extensive note on these questions appended to the case of Donlon Brothers v. Southern Pacific Company, 12 Am. & Eng., Ann. Cas. 1118, and comprehensive note on page 1124.

Contracts limiting the common law liability of carriers are not favored by the courts. Exemption from liability will not be presumed, but must be found clearly expressed in the contract. Clauses inserted in a contract granting immunity to the carrier from its common law obligations will be strictly construed against the carrier. Such clauses must be clear and distinct expressions free from

ambiguity, leaving nothing to implication or inference. Moore on Carriers, pp. 330, 351; Jennings v. Grand Trunk Ry Co., 127 N. Y. 438, 28 N. E. Rep. 394; Edsall v. Camden and Amboy Railroad and Transportation Co., 50 N. Y. 661.

As to the shipment of stock from Lakeland to Live Oak, the following clause in the bill of lading or special contract is relied upon as limiting the liability of the defendant company.

"And it is further agreed, that should damage occur for which the said company may be liable, the value at the place and date of shipment shall govern the settlement in which the amount claimed shall not exceed for a stallion or jack $———; for a horse or mule, $———; cattle, $——— each; for hogs, $———; and for sheep, $———." There was no evidence that the blank places above were not filled out through mistake, and there is an entire failure to show that the shipper and the carrier in fact agreed upon any valuation of the horses or mules whatsoever. Neither was there any evidence of the value of the stock at the place and date of shipment. And the plaintiff testified without contradiction that he did not agree upon a limited valuation of his stock for shipment.

Clearly the language of the bill of lading quoted above does not in itself bind the plaintiff in the amount of his recovery, to the maximum sum of $75 each as the stipulated value of his horses and mules.

The shipment of stock from Live Oak to Clearwater was not made under any written contract or bill of lading.

The attempt is made, however, to set up a special contract as to both shipments by showing that the plaintiff paid for the transportation of his stock at a tariff of charges under which, by the published schedule of rates of the defendant and the published Rules and Regulations of the Railroad Commission of this State, the defendant's

liability is limited to the maximum sum of seventy-five dollars for each horse or mule injured. This alone is not sufficient, for it is not shown that these tariff rates were brought home to the plaintiff or that he knew that the payment of the special tariff charge by him would bind him to a special maximum valuation of his stock. It was necessary to show that the plaintiff had notice or actual knowledge of these terms at the time or before the delivery of the stock by him to the defendant company to be transported, and that they were assented to by him. Baltimore & O. R. R. Co. v. Brady, 32 Md. 333; 3 Am. & Eng. Ency. Law 10, 19 Central Law Journal 163.

If, by a rule of the carrier, of which the shipper has notice, its liability is fixed by the rate of freight paid, and for the purpose of obtaining a certain rate of freight the shipper reports to the carrier a valuation on the goods shipped, the liability of the carrier is fixed by such agreement. If, however, the shipper has no notice of the rule of the carrier, the rule is otherwise. Klair v. Wilmington Steamboat Co., 4 Penn. (Del.) 51, 54 Atl. Rep. 694.

As the evidence is not so clear as to forbid any other inference than that the shipper consented to a specified valuation, the question of consent must be left to the referee's determination. Taylor v. Weir, 162 Fed. Rep. 585; Carpenter v. Baltimore R. R. Co., .. Del. ..., 64 Atl. Rep. 254.

The rules and regulations of the Railroad Commission of this State prescribe the maximum valuation, in the shipments of horses and mules, of $75.00 each for a certain released rate, and, for every increase of one hundred per cent. or fraction thereof in valuation, there shall be an increase of fifty per cent in rate; but the shipper has the option to ship at his own or the carrier's risk, and he will not be bound, in the limit of his recovery, by the payment of the released rate, unless it be shown that he

knew the rate paid was a released rate and there was a fair meeting of the minds of the shipper and the carrier that by payment of the released rate the recovery of the shipper would be limited to a certain maximum sum clearly agreed upon. See the comprehensive note to Donlon Bros. v. Southern Pac. Co., 151 Cal. 763, 91 Pac. Rep. 603, 12 Am. & Eng. Anno. Cas. 1118, text 1124.

Mr. Lane, in his report for the Interstate Commerce Commission, vol. 13, p. 562, has well said: "The carrier occupies a position of strategic advantage with respect to matters of transportation. The tariff rules and regulations are of its own making; the bills of lading and shipping receipts are drafted by its own attorneys. The shipper on the other hand, has no such vantage ground. It cannot be expected that he will always be familiar with the terms of the carrier's rate schedules and bills of lading, or that he will invariably know his legal rights. Practically he often has no choice but to accept the terms that are offered him.   *   *   *   Much of the friction that has developed between the public and the railroads in this regard is due doubtless to the fact that shippers, at the time of tendering their property for carriage, are not clearly advised of their rights, and do not understand fully the nature of the receipt which they sign. In the ordinary course of business few shippers are well informed as to the carrier's regulations. Many shippers are in ignorance of the different rates; are given bills of lading providing for limited liability, and become aware of the limitation clause only when a claim for damages is presented. It is, therefore, peculiarly the duty of the carrier's agent to give every reasonable assistance to shippers, in order that they may know what are the lawful and most advantageous terms upon which the carrier's services may be secured. The provisions of tariffs and bills of lading should be fair and unambiguous, and free from suspicion of illegality. The

shipper should be allowed his choice of rates which leave the carrier's liability unlimited as at common law, or lower rates based upon such a limited liability as the law sanctions. The rate finally fixed would not then be open to attack upon the ground that it was imposed upon the shipper and that he did not knowingly accept its terms."

The referee first allowed the sum of $200.00, as attorney's fee, and then ordered a remittitur of $98.75, leaving an award of $101.25, or fifteen per cent on the principal sum of the claim plus the fifty per cent per annum interest. In this, the referee erred. The maxium sum allowed by the statute is fifteen per cent on any amount recovered greater than the sum of one hundred dollars. We think the amount recovered means the amount of the claim recovered and not that amount plus the fifty per cent interest. The amount of claim recovered is made the basis of the fifty per cent interest and the attorney's fee allowed by the statute. This is the plain meaning and intention of the statute. It provides that "when the said claimant shall bring suit and recover * * * for his claim * * * he shall be allowed the said fifty per cent per annum." The amount of recovery relates to the disputed amount of the claim—the fifty per cent not being recovered in this sense, but allowed and fixed by the statute. Especially is this clear in that part of the statute providing that the attorney's fee "shall be fixed by the court, not to exceed fifteen dollars, if the amount recovered does not exceed one hundred dollars.

The referee should have awarded as attorney's fees, not more than fifteen per cent on $450, or $67.50. The amount awarded was $101.25. If the defendant in error, therefore, within thirty days enters a remittitur for the sum of $33.75, being the excessive award of attorney's fees, the judgment will be affirmed; otherwise the judgment stands reversed.

The costs on this writ of error will be taxed against the defendant in error.

WHITFIELD, C. J., COCKRELL and HOCKER, J. J., concur;

SHACKLEFORD, J, dissents;

TAYLOR, J., absent on account of illness.

WHITFIELD, C. J., concurring.

Chapter 5618, Laws of Florida, differs materially from the South Carolina statute considered in the case of Seaboard Air Line Ry Co. v. Seegers, 207 U. S., 73, and it may be that the Florida statute is not within the limitations formulated in broad general language by the Supreme Court of the United States in the Seegers case; but counsel have not argued the points that give me difficulty, and as all doubts should be resolved in favor of a legislative enactment, the validity of chapter 5618, Laws of Florida, is assented to in this case.

COCKRELL, J., concurring.

Under the decision in the Seegers case the legislature has the power to penalize a common carrier for failure to pay damages for freight injured or lost and the amount of the penalty imposed by the act under consideration would seem to be within constitutional limits.

My doubt as to the validity of the act rests upon the failure to penalize the claimant for making an exorbitant demand. The legislation is not, however, wholly one sided. There is a special privilege granted the common carrier in this: the act suspends the right of action for sixty days and should the carrier within that time pay

the claim, it does so without any interest, whereas as to other delinquents, the right of action begins with the demand and interest at the rate of eight per cent. per annum begins also at once, without sixty or other days of grace.

I resolve the doubt in favor of the legislature and vote to sustain the act.