## James Ross et al. v. Simpson County.

### [51 South. 597.]

Counties. *County building. Contracts. Insurance.*

Where the contract of a county for the building of a courthouse required the builder to procure fire insurance on the building during its construction for the benefit of himself and the county, and, on the abandonment of the contract by the builder, the county employed another to complete the structure, and authorized him "to do all things necessary to finish the building," the county became liable for premiums for insurance on the building taken out by the finishing contractor.

From the circuit court of Simpson county.

Hon. Robert L. Bullard, Judge.

James Ross and Edward Yerger, composing the partnership of Ross & Yerger, appellants, were plaintiffs in the court below, and Simpson county, appellee, was defendant there. From a judgment, predicated of a peremptory instruction in favor of defendant, the plaintiffs appealed to the supreme court.

Simpson county entered into a contract in writing, duly entered upon the minutes of its board of supervisors, with one Land for the construction of a courthouse to be erected at Mendenhall; and the board employed one Bryan as supervising architect to superintend the construction of the building. The contract with Land provided that he should forfeit the contract if he failed to comply with its terms, and the architect should so certify. It was stipulated in the contract that "the contractor shall, during the progress of the work, after the roof has been put on the building, maintain full insurance on said work in an amount equal to all payments made him up to that time, in his own name and in the name of the owner,

against loss or damage by fire. The policy shall cover all work incorporated in the building, and shall be made payable to the parties hereunto, as their interests may appear." The contractor, Land, partially completed the building, and at sundry times received payments for work done thereon from the county; but, after the roof had been put on the building, and before it was finally completed, he became unable to finish the building in accordance with the contract. Thereupon, on certificate of the architect, the county terminated the contract with Land, and employed Bryan to complete the building, an order to that effect having been duly entered on the minutes of the board of supervisors, one section of which contained the following provision: "It is further ordered that he (Bryan) do all things necessary to preserve and complete said building at the earliest time possible." In pursuance of these directions Bryan proceeded with the unfinished work upon the courthouse building, and, before the building was finished, he applied to Ross & Yerger, the plaintiffs, insurance agents, for fire insurance upon the building as provided for and required by article 12 of the original contract, and obtained three policies of insurance upon the building, the premium for which amounted to $225. Subsequently, and after the policies had expired by time, Ross & Yerger presented their statement of account for $225 to the county for payment, but the board of supervisors rejected the claim and declined to pay it. This suit was then instituted by plaintiffs to recover said claim and amount.

*May & Sanders,* for appellants.

The board of supervisors could not legally abrogate the contract in one instance and require Bryan to fulfill the contract in another instance. The order of the board of supervisors expressly required that he should do all things necessary to preserve the building, and the board, by its order, had ad-

judged that insurance was necessary to preserve the building. So, we say, by an order of the board of supervisors, passed in open session and spread upon its minutes as evidenced by the original contract with Land, and the subsequent order of the board passed and spread upon its minutes, requiring Bryan to fulfill the requirements of the contract made with Land, there was an express and valid contract made for insurance forming the basis of this controversy. That the matter of insurance was a part and parcel of the original contract is most evident, because it is incorporated in the original contract. The only theory upon which the judgment can be sustained is that a separate contract for insurance should have been entered upon the minutes of the board. This being true, it would have been necessary for the board to have made separate advertisement of this contract since the amount involved is more than $50. This is doubtless the reason which prompted the board to make the matter of insurance a part of the original contract. Knowing the uncertainty of the time when the roof was to be put on the building, and that a separate contract for insurance could only be ordered by the board in open session, and that still further time would be consumed in advertising for bids, and, perhaps, in the meantime the building would be destroyed by fire, would afford reasonable grounds for this presumption.

It could not be insisted, with reason, that every purchase of nails, lime, cement, etc., made or to be made by Bryan, should be reported to the board and ratified by them by spreading such ratification upon the minutes, before such material could be used in the construction of the building, or before the county would become liable for the purchase thereof. Then how can it be contended that the county could not be made liable for the insurance which was contracted for in pursuance of the same direction, under identically the same order, namely, for the preservation of the building?

*W. M. Lofton* and *R. C. Russell,* for appellee.

The law fixes the mode and manner in which boards of supervisors may bind counties. Their contracts must be evidenced by the entries on their minutes made in open session, and such authority cannot be delegated. The board of supervisors can only speak through its minutes. Code 1906, § 369; *Board v. Patrick,* 54 Miss. 240; *Dixon v. Greene County,* 76 Miss. 794, 25 South. 665.

Boards of supervisors bind counties only when acting within the range of their authority, and in the mode and manner pointed out by the statutes. Their contracts are evidenced by the entries on their minutes, and can no more be varied by proof that the members failed to speak, though they knew that those with whom they were dealing misunderstood the purport of what they were doing, than they can be created and established by silence alone. It takes an affirmative act of the board within the scope of its authority, evidenced by an entry on its minutes, to bind the county by a contract, and when thus made, the contract is not to be varied, any more than created, by the mere silence of a portion of the board and the mistaken assertions of others. Code 1906, §§ 361, 369; *Bridges v. Supervisors,* 58 Miss. 817.

The testimony excluded by the court does not show that the board ever undertook to delegate authority to Bryan to take out insurance on the courthouse, and in the second place, if it had passed such an order, it would not have been valid. In the case of *Groton Bridge Co. v. Warren County,* 80 Miss. 214, 31 South. 711, in speaking of the powers of said board, this court followed the holding in the case of *Wollcot v. Lawrence Co.,* 26 Mo. 272. There the court said: "The county board is only the agent of the county, and, like any other agent, must pursue its authority, and act within the scope of its power. In respect to many things that concern the county, it has a large discretion; but in reference to the erection of county buildings, its

authority is defined by public law, and is special and limited. It cannot act like general agents, whose acts may bind their principal if performed within the general scope of their agency, though in violation of private instructions unknown to those who deal with them, for it has no power over the subject except such as is given by law; and every dealing with, or on behalf of a county, must be within the scope of authority. The law is the warrant of attorney to the county board. All its provisions are plain, and the contractor, before he undertakes the work, as he deals with an agent whose powers and duties are prescribed, ought to see that the agent is pursuing his authority, for the agent cannot bind the county except as it is commanded or permitted to do. And parties contracting with the counties are charged with knowledge of this statute, and unless they pursue the terms of the contracts made in pursuance of section 344, or, in case of extra work or labor for the board, amend the contract or ratify one informally made, in accordance with the said section, no recovery can be had against the county. The above section is in substance the same as our Code 1906, § 369.

MAYES, J., delivered the opinion of the court.

An examination of this record leaves no doubt in our minds that the county of Simpson is liable to appellants for the amount of premiums due for insuring the courthouse property. Express authority is given to Bryan to do "all things necessary to preserve and complete the building at the earliest time possible." This order of the board necessarily conferred upon him the power to insure this building, as it was in the highest degree necessary to insure, in order to take proper precaution to preserve the building in compliance with the board's order, and it would almost have amounted to criminal negligence had Bryan failed to insure and the building been destroyed by fire.

We do not deem it necessary to protract the discussion of this case, for it seems plain to us that, instead of a peremptory instruction against appellants, it should have been given for them.

*Reversed and remanded.*