ATLANTIC COAST LINE RAILROAD COMPANY, *Plaintiff in Error*, v. HINELY-STEPHENS COMPANY, *Defendant in Error*.

1. The doctrine of the common law which holds the carrier to the liability of an insurer does not deny to the parties to the shipment the right to enter into contracts with reference to this liability, and it is well settled that the owner and the carrier may, by contract, provide for a limitation of the carrier's liability that is not illegal or unreasonable.

2. Whenever a railroad company receives cattle or live stock and undertakes to transport the same for hire, such company assumes the relation of a common carrier and becomes chargeable with the duties and obligations which are incident to that relation, except so far as such duties and responsibilities may legally be modified by special contract.

3. The settled rule in the United States is that an acceptance by a shipper or his agent of a receipt or bill of lading containing a limitation of the carrier's liability is binding on him when the limitation is not illegal or unreasonable.

4. Where there is a deviation from a special contract route, such deviation abrogates every feature of the contract of carriage, including an agreed value of the live stock transported made in consideration of a reduced freight rate.

Appealed from the Circuit Court for Suwannee County.

The facts in the case are stated in the opinion of the court.

*John L. Doggett,* and *J. B. Johnson,* for Plaintiff in Error;

*C. A. Hardee* and *H. E. Carter,* for Defendant in Error.

WHITFIELD, J.—The trial herein was had on the following declaration:

"The Hinely-Stephens Company, a corporation existing under the laws of the State of Florida, plaintiff, sues Atlantic Coast Line Railroad Company, a railway corporation, having an office and resident agent for the transaction of business and doing business in Live Oak, Suwannee County, Florida, defendant; Action on the case, damages $1,800.00. For that, Whereas, The defendant corporation, during the month of March, A. D. 1910, prior thereto and since said date, was a common carrier possessed of, owning, controlling and operating as such common carrier, a line of railroad from the City of Tifton, State of Georgia, to the City of Waycross, of said State, and from thence to the City of Live Oak, Florida, as such common carrier charged and received therefor the usual hire and reward for the handling of freight and carriage of passengers usually exacted by common carriers.

And the plaintiff says that on the 19th day of March, 1910, it caused to be delivered to the Southern Railway Company, a corporation and common carrier, with offices at Howell Station, Fulton County, Georgia, a certain shipment of horses and mules, consisting of fifteen mules and

ten horses, the property of the plaintiff, to be safely and securely transported and delivered to the plaintiff at Live Oak, Florida, which said shipment was accepted by the Southern Railway Company, at Howell Station, Georgia, and said Southern Railway at said time, as a condition for said shipment, charged and received the sum of $69.75 as freight, which said sum was paid by the plaintiff to the said company, and said car of stock was by them received and transported by it and its connecting carrier lines of road to the City of Tifton, Georgia, and at said point to-wit: Tifton, said car of stock as above set forth was received and taken by the defendant, Atlantic Coast Line Railroad Company, for shipment to Live Oak, Florida, the destination of said car load of stock, for hire and reward, to-wit: the proportionate amount of the freight which was paid by the plaintiff for the shipment of said car of stock from Howell Station, Georgia, to Live Oak, Florida, Said horses and mules composing the aforesaid shipment, when delivered as aforesaid, were in good condition and it became and was the duty of the defendant to safely and securely, and without delay, transport and carry said horses and mules and deliver the same to the plaintiff, uninjured, at Live Oak, Florida, the destination, as aforesaid; yet the defendant did not safely and securely transport said horses and mules and deliver the same to the plaintiff uninjured, as they were obligated, by law, so to do; but on the contrary, by the careless use and negligent management of the train of cars of the defendant, used in transporting said horses and mules, and by the long and continuous delay of said car of stock upon its line of road, said car of stock being delayed from the time of its receipt by the defendant, five days before delivery, whereas they should have been deliverd to the consignees, plaintiff herein, within twenty-four hours

after the receipt by the defendant, by means of which careless and negligent handling of said carload of stock and of the delay in delivery, as aforesaid, one mule and two horses were injured, hurt and wounded to such a great extent that they died within a few hours after delivery to the plaintiff at Live Oak, Florida, to the damage of plaintiff in the sum of $550.00; also the remaining horses and mules of said carload shipped as aforesaid, were injured, crippled and bruised, that plaintiff suffered a damage thereon of $20.00 per head, or a total of $1,000. And plaintiff avers that by reason of the failure of the defendant to promptly carry said stock as they were obligated so to do, it was forced to feed said stock three times in excess of what was usual or necessary, or what would have been required, should they have been handled promptly, as the defendant was under obligation so to do, and as a result thereof the plaintiff was forced to expend the sum of $100.00, in feeding said stock. Plaintiff further says that within a few days after delivery of said stock, and more than sixty days before the institution of this suit, he made and submitted to the station agent, servants and employees of said Company, his claim in writing for damage on account of the loss and damage to said horses and mules, and requested that the same be paid; but said claim has not been paid, and plaintiff claims 50% per annum interest on his claim from the 24th day of March, 1910, together with a reasonable attorney's fee to be allowed plaintiff's attorneys, wherefore plaintiff sues and claims $1,800.00 as its damages."

The following pleas were filed by the defendant company:

"1. That it is not guilty.

2. That it never promised as alleged.

3. That the defendant denies that it was its duty to

safely and securely and without delay, transport and carry the alleged horses and mules and deliver the same to the plaintiff uninjured at Live Oak, Florida.

4. Defendant denies that the alleged shipment of live stock was delayed upon its line of road for a period of five days from the receipt thereof by this defendant, and before the delivery thereof to the plaintiff.

Now comes the defendant in the above entitled cause by its attorneys J. B. Johnson and John L. Doggett and for additional plea to the 1st count say that the alleged shipment moved over defts line of road under a special live stock contract the same being attached to and made part of plaintiff's second count of its amended declaration which said contract is hereby made a part of this plea. That the only duties and obligations assumed by defendant in regard to the alleged shipment arose out of said special contract and were not such as alleged in said first count."

A replication to the last plea was filed as follows:

"Comes now the plaintiff in the above styled cause, by counsel, and replying to the additional plea of the defendant, filed herein by leave of the court on the 21st day of May, A. D. 1912, and for replication thereto says; That it is not true as alleged in said plea that the shipment of stock, the injury for which plaintiff sues, moved over the line of road of the Atlantic Coast Line Railroad Company, under the alleged special live stock contract, but the plaintiff avers the truth to be that plaintiff did deliver the said shipment of stock to the Southern Railway and accepted a bill of lading for the same, in which said bill of lading the routing and way of said shipment was agreed and expressed as follows, to-wit: From Howell Station, Georgia, over the Southern Railway the G. S. & F. Rail-

way and deliver to the Atlantic Coast Line Railroad Company, the defendant herein, at Jasper, Florida.

And plaintiff further replying says, that the defendant did not receive the shipment of stock in question at Jasper, Florida, as agreed and expressed in said bill of lading, but did receive the same for transportation at Tifton, Georgia, and carried the same by way of Waycross, Georgia, a distance a great deal further than the route agreed upon and expressed in said bill of lading, and from thence delivered said shipment of stock to the plaintiff at Live Oak, Florida, by reason of which deviation and express violation of the terms of the routing of said bill of lading, the said shipment of stock did not move over defendant's line of railroad under the alleged special live stock contract."

Judgment for the plaintiff in $800.00 was rendered and the defendant took writ of error.

The declaration originally contained other counts, but as the one on which the trial was had is in tort it is not necessary to discuss many of the points argued upon the theory that the action is *ex contractu*.

In an action against a railroad company for goods lost by it as a common carrier, the burden of proof is, first, on the plaintiff to show delivery and acceptance of the goods, and next, the loss and value thereof. This shown, the burden is upon defendant to relieve itself of liability by showing legal contract exemption, or that the loss was occasioned by a public enemy, or by the act of God, or that the goods had in themselves elements of destruction which occasioned the loss.

Where goods to be transported by several carriers are lost or injured, and the last carrier is sued, it will be held liable, if it does not show that the loss or injury occurred ·on some preceding line, on the presumption

that the goods delivered to the first carrier were also delivered to the last, and in the same condition in which they were started. Savannah F. & W. Ry. Co. v. Harris 26 Fla. 148, 7 South. Rep. 544.

The doctrine of the common law which holds the carrier to the liability of an insurer does not deny to the parties to the shipment the right to enter into contracts with reference to this liability, and it is well settled that the owner and the carrier may, by contract, provide for a limitation of the carrier's liability that is not illegal or unreasonable.

Whenever a railroad company receives cattle or live stock and undertakes to transport the same for hire, such company assumes the relation of a common carrier and becomes chargeable with the duties and obligations which are incident to that relation, except so far as such duties and responsibilities may legally be modified by special contract. Summerlin v. Seaboard Air Line Ry., 56 Fla. 687, 47 South. Rep. 557.

The settled rule in the United States is that an acceptance by a shipper or his agent of a receipt or bill of lading containing a limitation of the carrier's liability is binding on him when the limitation is not illegal or unreasonable. And that it is not essential to the validity of such a limitation that it be shown that the shipper was aware of it, or that he had read it, or that it had been explained to him, or his attention called to it, provided the carrier made use of no improper means to prevent his noticing or objecting to it. And that every shipper is conclusively presumed, in such a case, to have read and assented to the provisions of the receipt or bill of lading given him, whether he in fact assented or not, and he is estopped from gainsaying or repudiating it. Atlantic Coast

Line R. R. Co. v. Dexter & Connor, 50 Fla. 180, 39 South. Rep. 634.

The live stock in this case 25 horses and mules were shipped from Atlanta on Saturday afternoon March 19th, 1910. On account of the Georgia Sunday law, the shipment did not leave Macon till the morning of March 21st, and it was delivered to the defendant at Tifton, Georgia, on the same afternoon.

As there is evidence that the live stock were in good condition when they were delivered to the initial carrier at Atlanta and no evidence that they were not in good condition when delivered to the defendant in the afternoon of March 21st, at Tifton, Georgia, and as it is shown that they were in bad condition when they were delivered by the defendant at Live Oak, Florida, the liability of the defendant appears.

The plaintiff did not have the care of the stock *en route* and there is evidence from which the jury could have found that the shipment was unduly delayed on the defendant's lines and that the stock were injured in consequence of such delay.

There was no plea of contributory negligence and it does not clearly appear that any negligence of the plaintiff proximately contributed to the injury. As the defendant received the stock in good condition Monday afternoon, the shipment of the stock by the plaintiff in Saturday afternoon, so that they would be delayed over Sunday on the road, does not show that the plaintiff thereby proximately contributed to the injury.

There being evidence of an undue delay on the defendant's lines of road and that such delay caused the injury, it is not material that the delay was less than five days as alleged. The issue made on the period of the delay was immaterial on this action in tort.

There was a deviation from the stipulated route, defendant carrier received the shipment at a point on its line different from the stipulated point. In the opinion of the writer, this deviation may affect any of the special contract exemptions from liability as an insurer in favor of the defendant as a common carrier, but such deviation does not affect the agreed value that was made of the live stock in consideration of a reduced freight rate, the injury having been caused by the negligence of the defendant.

But a majority of the court, upon the authority of the following cases, are of the opinion that the deviation abrogated every feature of the special contract of carriage, and that consequently the recovery for the stock that died because of the defendant's negligence should be their proven value and not the agreed value: Waltham Mfg. Co. v. New York & T. S. S. Co., 204 Mass. 253, 90 N. E. Rep. 550, 17 Ann. Cas. 837 and note; 5 Am. & Eng. Ency. Law (2nd ed.) 425, and note.

No attorney's fee was allowed by the court and the plaintiff waived a recovery of interest.

The judgment is affirmed.

SHACKLEFORD, C. J. and COCKRELL and HOCKER, J. J., concur.

TAYLOR, J., dissenting.

In this case my view of the special contract between the shipper and the carrier is that the shipper, in consideration of the diminished charge for freight on the part of the carrier, agreed that the carrier should be liable for a fixed and limited sum for the loss of any of the stock that was not safely carried and delivered, no matter what act

of negligence on the part of the carrier should cause the non-delivery or loss of the stock, whether by delay produced by a wrong routing of the car in which the stock was shipped, or by any other negligent act; and that the wrong routing of the car over a longer route did not abrogate or annul this feature of the contract any more than if the carrier had negligently side tracked the car in which the stock was shipped and thereby produced the same delay and consequent loss of the stock as was brought about by the careless wrong and prolonged routing of such car. My view is that the shipper cannot recover any greater sum for his lost stock than the amount fixed and agreed upon in the contract between the parties.