FLORIDA EAST COAST RAILWAY COMPANY, A CORPORATION, *Plaintiff in Error*, v. GEORGE GEIGER, *Defendant in Error*.

1. A motion "to set aside the verdict" containing grounds that are peculiarly applicable to a motion for new trial, which was treated by the trial court and by counsel as a motion for new trial, will be so regarded by the appelltate court. If the verdict is set aside, a new trial would necessarily and inevitably follow.

2. While contributory negligence is an affirmative defense that should be pleaded and proven by the defendant, yet if the circumstances, shown by the plaintiff, or shown by the defendant without objection, indicate contributory negligence, the defendant is entitled to the benefit of the rules of law applicable to such circumstances.

3. In an action for personal injuires alleged to have been received in jumping off a train, where there is evidence indicating carelessness on the part of a passenger, who was an active normal man, in jumping off a moving train, it is error

to refuse to give a requested charge that "it is the duty of every person about to get on or off of the car of a passenger train propelled by steam to exercise due and ordinary care and prudence commensurate with the danger to be apprehended."

Appealed from the Circuit Court for Duval County.

## STATEMENT.

The first count of the declaration herein is as follows: "The said plaintiff, George Geiger, a negro, by his attorney sues the said defendant, Florida East Coast Railway Company, a corporation duly organied, chartered and existing under the laws of Florida, which has been summoned to answer herein in this first count of his declaration, for that, whereas;

That about five o'clock in the afternoon of about Saturday, May 20th, A. D. 1911, the said defendant was operating a certain railway passenger train for the transportation of passengers along and over a certain railway, a portion of which extended from the village of Atlantic Beach, in Duval County, Florida, to the City of Jacksonville, in Duval County, Florida. And about the time aforesaid, and just as said railway passenger train was leaving said village for said city said plaintiff ascended the steps and on to the platform entrance of the regular passenger coach, nearest the locomotive of said train (and which is usually the position of the coach set apart in passenger trains, by railway companies, for negro passengers to occupy) to be transported as a passenger by said defendant from said village to said city, and said plaintiff, upon reaching said platform entrance of said coach on said train, observed said coach

was being occupied by white passengers, and said train being in motion, said plaintiff thereupon started through said coach and in search of the coach occupied by negro passengers. And said train being in motion as aforesaid it then and there became, and was the duty of said defendant to allow said plaintiff to pass through said coach (and other coaches) to the coach occupied by negro passengers on said train, and not to order said plaintiff off said train while said train was in motion, and not to put said plaintiff in fear of personal violence from any of its employees, and to remove its baggage trucks from along side its railway so passengers ordered off said train, by it, while said train was in motion would not be thrown against the said baggage trucks, by the motion of said train, and to safely transport said plaintiff from said village to said city; and said defendant, through its regular railway passenger train conductor on said train, and while said train was in motion, then and there, carelessly and negligently refused to allow said plaintiff to pass through said coach. and ordered said plaintiff off of said train, while the same was in motion in an angry and threatening manner, words and tone of voice, and said plaintiff fearing personal violence from said defendant through its said conductor, and in obedience to said order of said defendant through its said conductor, and while said plaintiff was stepping from the lower step of said platform, and upon the ground, said train was passing certain baggage trucks along the side of, and near, said railway, and said plaintiff by the motion of said train was then and there thrown against said baggage trucks, and thence, under said moving train, and thereby, said plaintiff's left arm was badly cut, wounded and mangled, and had to be amputated

near the shoulder, and said plaintiff's two toes, on said plaintiff's right foot, were cut, wounded and mangled, and had to be amputated, and other parts of said plaintiff's limbs, body and head were bruised and cut, and said plaintiff was permanently injured and confined to his bed and forced to endure great pain, suffering and anxiety, for a long period of time, and to incur liabilities, and expend large sums of money for hospital, trained nurse, and medical and surgical skill and attention, and medicines and bandages and crutches in an effort to be healed and cured of his said injuries, and was prevented from earning money and attending to his business and affairs, and was greatly damaged.

Wherefore, said plaintiff sues said defendant and claims $30,000.00 damages."

The second count of the declaration need not be considered.

A demurrer to the first count of the declaration containing the following grounds was overruled:

"1. That the first count does not state a cause of action against this defendant.

2. That there is no allegation of any act on the part of the defendant's conductor to induce fear in plaintiff of violence from defendant's conductor.

3. That it does not appear that plaintiff was compelled to attempt to alight from a moving train.

4. That no actionable negligence on the part of the defendant is alleged in said count.

5. That plaintiff in attempting to alight from a moving train incurred the risk of the injury sustained.

6. That defendant's conductor was within his legal rights in refusing to permit a negro to pass through a coach intended exclusively for white passengers.

7. That defendant is not required to guard against the negligence of passengers attempting to alight from a moving train.

8. That the allegations of said count show that the plaintiff was injured by his own negligence."

Pleas as follows were filed and issue joined thereon:

"And now comes the defendant, Florida East Coast Railway Company, by Alex. St. Clair-Abrams, its attorney, and for a first plea to both counts of plaintiff's declaration says that it is not guilty.

And for a second plea (to both counts of plaintiff's declaration) defendant says that it is not true, as alleged in said counts that the defendant's conductor on the day set forth, or any other day, and while defendant's train was in motion, refused to allow the plaintiff to pass through the coach, but while the train was in motion, in angry and threatening words and tone of voice ordered the plaintiff off of said train.

And for a train plea (to both counts of plaintiff's declaration) the defendant denying each and every allegation of said counts says that the plaintiff received the injuries complained of by his own negligence and not by the negligence or procurement of this defendant, in that the plaintiff himself, without the knowledge, procurement or consent of this defendant, carried a baggage truck belonging to this defendant to and on defendant's platform near the baggage car, and negligently and carelessly left it there immediately before the train started, and received his injuries by coming in contact with said baggage truck, which the plaintiff himself had left standing close to defendant's train of cars.

And for a fourth plea to both the counts of the declaration, the defendant denying each and every other allega-

tion of each count of plaintiff's declaration, says it is not true as set forth in each of said counts that the plaintiff was refused permission by the conductor of defendant's train to pass through a white car to reach what is known as the colored car, but the defendant says that plaintiff received the injuries described in each count by his own carelessness and negligence in leaving the baggage car of said train and getting on the standing truck and jumping therefrom and attempting, while said train was in motion to get on said train and by his own negligence and carelessness in running along the platform of defendant's station and coming in contact with the baggage truck which the plaintiff himself had placed on the platform, and by reason of coming in contact with said truck, plaintiff was thrown off the platform and received the injuries complained of.

And for a fifth plea to both counts of plaintiff's declaration, the defendant denying each and every other allegation of each of said counts, says that it is not true as alleged in each of said counts that defendant had left a baggage truck on the platform of defendant's station in close proximity to defendant's train; for the defendant says that the plaintiff himself carried said baggage truck to and on the platform of defendant's station, and himself left said baggage truck where it was when he came in contact with it in attempting to get on a car of defendant's train while said train was in motion.

Wherefore this defendant says that for the matters and things set forth in this plea, the plaintiff ought not to have and maintain his said action."

Verdict and judgment for $8,333.66 were rendered for the plaintiff. The defendant presented the following motion:

"Now comes the defendant by Alex. St. Clair-Abrams, its attorney, and moves the court to set aside the verdict rendered in this case on the following grounds:

1. Because the verdict is contrary to the evidence.

2. Because the verdict is contrary to law.

3. Because the verdict is contrary to the charge of the court.

4. Because the verdict is contrary to the overwhelming weight of the evidence.

5. Because the amount of the verdict is excessive.

6. Because the verdict is so grossly excessive as to raise the presumption that the jury never considered the evidence, but were actuated by prejudice and passion.

7. Because the verdict is so grossly excessive as to inflict punitive damages upon the defendant.

8. Because the overwhelming preponderance of the evidence showed that the plaintiff was endeavoring to get on the car of the moving train in daylight in the face of a truck standing on the platform close to the moving train.

9. Because the overwhelming preponderance of the evidence shows that the plaintiff was injured as a result of his own gross negligence and carelessness.

10. Because the court erred in refusing to give the fourth charge asked for by the defendant.

11. Because the court erred in refusing to give the fifth charge asked for by the defendant.

12. Because the court erred in refusing to give the seventh charge asked for by the defendant.

13. Because the court erred in refusing to give the 7th charge asked for by the defendant.

14. Because the court erred in refusing to give the eighth charge asked for by the defendant.

15. Because the court erred in refusing to give the ninth charge asked for by the defendant.

16. Because the court erred in refusing to give the twelfth charge asked for by the defendant.

17. Because the court erred in refusing to give the fifteenth charge asked for by the defendant.

19. Because the verdict of the jury does not find the defendant guilty.

20. Because a verdict which says, 'We, the jury, find a verdict for the plaintiff the sum of eight thousand three hundred thirty three dollars and sixth cents' is not equivalent to a verdict of guilty.

21. Because the jury failed to find the defendant guilty or to assess any damages against the defendant."

In the bill of exception the trial judge certifies that the above motion "to set aside the verdict," "was argued by counsel for plaintiff in error in the presence of counsel for defendant in error, and submitted as a motion for a new trial." The motion was denied, and defendant took writ of error to the judgment rendered.

*Alex. St. Clair-Abrams,* for Plaintiff in Error;

*D. C. Campbell,* for Defendant in Error.

WHITFIELD, J.—(*After stating the facts.*)—The declaration alleges that the defendant, a railroad company, through its regular railway passenger train conductor on its train, and while the train was in motion, then and there, carelessly and negligently refused to allow the plaintiff to pass through the coach, he was about to enter, and ordered the plaintiff off of said train, while the same was in motion, in an angry and threatening manner,

words and tone of voice, and plaintiff fearing personal violence from defendant through its conductor, and in obedience to the order of defendant through its conductor, and while plaintiff was stepping from the lower step of the platform of the car and upon the ground, the train was passing certain baggage trucks along the side of and near the railway, and plaintiff by the motion of the train was then and there thrown against said baggage trucks, and thence under said moving train, and thereby injured.

The only negligence of the defendant alleged is that the defendant "while said train was in motion, then and there carelessly and negligently refused to allow said plaintiff to pass through said coach, and ordered said plaintiff off of said train, while the same was in motion in an angry and threatening manner, words and tone of voice." If this alleged negligence is shown to have in fact contributed proximately to the injury, liability results. Whether the plaintiff was reasonably justified in "fearing personal violence from said defendant through its said conductor," and whether plaintiff acting "in obedience to said order of said defendant through its said conductor," got off the train while it "was passing certain baggage trucks along the side of and near said railway," and whether such action of the plaintiff was justified, or was not warranted under the circumstances and was the sole proximate cause of the injury or constituted contributory negligence, are to be determined from the evidence and the principles of law applicable thereto. There was no error in overruling the demurrer to the first count of the declaration.

As the motion "to set aside the verdict" contained grounds that are peculiarly applicable to a motion for

a new trial, and as the motion was treated by the trial court and by counsel as a motion for new trial, it will be so regarded here. If the verdict is set aside, a new trial would necessarily and inevitably follow. See 29 Cyc. 942; Hartley v. Chidester, 36 Kan. 363, 13 Pac. Rep. 578; 14 Ency. Pl. & Pr. 881; Wade v. Doyle, 17 Fla. 522, text 530.

While contributory negligence is an affirmative defense that should be pleaded and proven by the defendant, yet if the circumstances, shown by the plaintiff, or shown by the defendant without objection indicate contributory negligence, the defendant is entitled to the benefit of the rules of law applicable to such circumstances.

There is no allegation that the defendant negligently left the baggage truck at the point where it proximately contributed to the plaintiff's injury; and on the authority of Atchinson, T. & S. F. Ry. Co. v. Calhoun, 213 U. S. 1, the defendant could not reasonably have contemplated that a passenger would get off a moving train at the point where the truck was standing.

There is no testimony that the conductor refused to allow the plaintiff to pass through the white coach on his way to the colored coach as alleged, and the plaintiff testifies that he had on previous occasions been allowed to do so.

The complaint is that just as the train started to move from the station the plaintiff entered a coach containing white passengers and was ordered by the conductor to "get off here and go to the nigger coach where you belong;" and it is claimed by the plaintiff that in obeying the order of the conductor to get off the train he was injured by colliding with a truck as he jumped from the front platform of the coach next to the baggage car while

the train was moving with increasing speed.   The laws of the State forbid colored and white passengers to occupy the same coach on a railroad train.

The flagman who stopped the train when the accident occurred, testified that he was standing on the step of the fourth car from the rear end of the train, and that after the train started he saw the plaintiff on the ground running from the front portion of the train towards the rear of the train passing a truck twenty or thirty feet, and catch hold of the grab iron on the platform of a coach in an effort to get on; that witness saw plaintiff would collide with the truck as the train passed it before he could get on the train, and witness went inside and pulled the bell cord twice as a signal to stop at once, "and put the air on " and "put the emergency valve on" and stopped the train.   Several other witnesses who were not interested and were in a position to see, testified that the plaintiff was injured in trying to get on the moving train.   The circumstances in evidence plainly indicate that the plaintiff was injured while trying to get on a coach at least two or three cars behind the baggage car. Even if the plaintiff was ordered to leave the coach next to the baggage car in which were white passengers, and this is pointedly controverted, it would seem from the circumstances that he got off safely, and a preponderance of the evidence indicates that he was injured while trying to get on another coach towards the rear of the train, under circumstances that do not warrant a recovery of damages by him in this action.

There was, however, evidence that the plaintiff was injured in jumping off the train.   As the jury found the defendant liable, the question whether the plaintiff was

justified in jumping off the train as he testified he did, becomes material.

The plaintiff testified that just as the train started from the station, he, with another colored man just behind him, entered the coach next to the baggage car, thinking it was the coach for colored passengers, and just as he stepped in the coach in which were white passengers, the conductor said: "Get off here. Go to the nigger coach where you belong;" and that the conductor rushed at plaintiff just as though he was going to push or hit him; that plaintiff jumped off the train and was injured; that if he had stood in the coach the conductor coming towards him would have been close enough to him to push him off; that the conductor did not threaten what he would do. This evidence is corroborated in some particulars by several witnesses.

It seems clear that even if by reason of the well recognized status and yielding disposition of the members of the colored race in the presence of commanding authority, there was some incentive for the plaintiff, a colored man, to reach the colored coach by alighting and getting on again, rather than to ask permission to assert a right to pass through the white coach to the colored coach, or to remain on the platform until he reached a place of safety, yet there was under the circumstances no reasonable occasion or excuse for the plaintiff, a man of twenty-three years of age, and apparently accustomed to travel, to jump off the moving train against a truck that he could easily have seen, it being day light. The plaintiff testifies that he was not being threatened by the conductor; and there appears to be nothing to justify a fear of personal violence from the conductor.

The court refused to give the following instruction.

requested by the defendant company: "It is the duty of every person about to get on or off of the car of· a passenger train propelled by steam to exercise due and ordinary care and prudence commensurate with the danger to be apprehended." It appears that the plaintiff was an active normal man. Under the issues and the evidence this charge was appropriate.

As the service rendered and the rates charged by public service corporations are affected by all expenditures made by them, including unreasonable regulations and recoveries for injuries to persons and property, the public are interested in such expenditures and recoveries. The law forbids the payment by public service corporation of illegal demands of all kinds and of unreasonable or excessive amounts for labor, property or management or other services of persons used in rendering the public service undertaken; and likewise the law forbids the payment of illegal or excessive damages for the negligent injury of persons or property. If there is no legal liability for an injury the law forbids a recovery. If there is liability the law allows a recovery of reasonable damages, and forbids excessive recoveries, as well as affords a remedy for an award in inadequate damages. It is therefore the duty of public service corporations to respond promptly to legal and reasonable demands for their negligent injuries to persons or property, and also to resist demands when there is no legal liability, as well as to resist unreasonable or excessive demands where there is liability. Liability for negligence is determined by the application of appropriate principles of law to the circumstances of the particular case. The law does not provide for recoveries of arbitrary amounts as damages for negligent injuries to persons; but where there is liability,

a recovery of reasonable damages is allowed, the amount to be determined from the circumstances of each case by a jury under appropriate instructions from the court, subject to such appellate review as is provided by law. Litigation is justified only when the circumstances of the particular case warrant a reasonable belief that a refusal or failure to compensate for a negligent injury is unjust, or that the demand is unlawful or excessive. In this case the defendant was justified in contesting the liability and the damages awarded.

The law now affords no certain and uniform standards for determining the amount of damages to be awarded for negligent injuries of persons, and the administration of justice is consequently not uniform or certain. As an illustration of this the records of this court show personal injuries in two cases that are practically similar in character and consequences, yet in one case the verdict awarding damages was nearly four times as large as in the other. One or the other was apparently unjust. Legislative action seems to be necessary in attaining justice and uniformity in adjudicating compensation for personal injuries.

The judgment is reversed and a new trial awarded.

TAYLOR AND HOCKER, J. J., concur.

SHACKLEFORD, C. J., AND COCKRELL, J., dissent.