ATLANTIC COAST LINE RAILROAD COMPANY v.
O. W. COWART.

190 So. 546
Opinion Filed August 1, 1939
Rehearing Denied September 23, 1939

*W. E. Kay, Howell, Doggett & Sutton,* for Plaintiff in Error;

*Hilburn & Merryday,* for Defendant in Error.

BUFORD, J.—Writ of error brings for review judgment in favor of the plaintiff, the culmination of suit for damages occasioned by injury to cattle while in transit on defendant's railroad.

Plaintiff in error has presented seven (7) questions for our consideration. The first question is:

"Where plaintiff in the first count of his declaration bases his right of recovery upon defendant's alleged failure to perform its duty to safely transport and deliver a carload of cattle under a verbal agreement and in the second and third counts charges the defendant with failure to properly transport and deliver the same carload of cattle under the terms of a written contract and at the trial introduces the written contract, which is substantially at variance with the alleged verbal contract, did not the trial court's refusal to grant defendant's motion to require an election of counts constitute such an abuse of discretion as to warrant a new trial?"

When this question is considered in connection with the record we fail to find substantial basis for it in the record.

In the first count of the declaration it is alleged: "And it became and was the duty of the defendant to safely and securely and without delay transport and carry said cattle and deliver the same to the plaintiff, uninjured at Seville, Florida, the destination aforesaid, and it was the duty of the defendant and the defendant by implication of law agreed to ship said cattle from Branford, Florida, via High Springs, Florida, Gainesville, Florida, Palatka, Florida, to Seville, Florida, on the lines of railway of the defendant, as that was the shortest route over the defendant's line of railway from Branford, Florida, to Seville, Florida, said route being a distance of 124.6 miles from Branford, Florida, to Seville, Florida, the shortest and safest route for said shipment. Yet the defendant did not safely and securely transport said cattle and deliver the same to the plaintiff uninjured, as it was obligated by law so to do; but on the contrary by the careless use and negligent management of the train of cars of the defendant used in transporting said cattle, and by the long continuous delay of said car of stock upon its line of road, said car of stock being carelessly and negligently, and in disregard of the plaintiff's rights, transported and carried from Branford, Florida, to High Springs, Florida, and from thence to Jacksonville, Florida, and from thence to Seville, Florida, covering a distance of 188 miles, and thereby caused great delay in the shipment of said cattle, and the defendant thereby disregarded its duty and obligation to the plaintiff by failure to carry and transport said cattle the shortest and safest route from Branford, Florida, via High Springs, Gainesville and Palatka, to Seville, Florida, by means of which careless and negligent handling of said cattle and of the delay in delivery, as aforesaid, eight head of said cattle

of the value of $120.00 died in transit, and were thereby totally lost to the plaintiff, and 45 head of said cattle were crippled, wounded, bruised and greatly damaged reduced in value to the damage of the plaintiff in the sum of $90.00. And plaintiff avers that by reason of the failure of the defendant to properly carry said cattle as they were obliged so to do, and its failure to route said cattle the shortest and safest route over its lines, it was forced to unload and feed said cattle in Jacksonville, Florida, when in truth and in fact had the defendant shipped said cattle the shortest and safest route aforesaid, there would have been no necessity for unloading or feeding said cattle, which the defendant was required to do, and as a result thereof the plaintiff was forced to pay for said feeding."

In Count Two of the declaration it is alleged:

"Said cattle composing the aforesaid shipment when delivered, as aforesaid, were in good condition, and were then and there loaded into a freight car of the defendant as directed by the defendant, and it became and was the duty of the defendant, and the defendant agreed to safely and securely and without delay transport and carry said cattle and deliver the same to the plaintiff, uninjured, at Seville, Florida, the destination aforesaid, as expressed in the special agreement made at said time in wrtiing between the parties and herewith filed and marked Exhibit 'A' and hereby made a part of the second count of this declaration as if same were fully set out therein, with the following corrections: Said contract was drafted by the agent of the defendant at Branford, Florida, on the 15th day of June, 1933, and signed by the plaintiff and defendant on said date. By mistake, oversight or inadvertence of the plaintiff and defendant, said contract in one place therein is dated the 15th day of May,

1933, when it should have been dated the 15th day of June, 1933, the time same was executed, signed and delivered.

"And it was the duty of the defendant, and the defendant by implication of law (although not specifically set forth in said bill of lading or shipping contract) agreed to ship said cattle from Branford, Florida, via High Springs, Florida, Gainesville, Florida, and Palatka, Florida, to Seville, Florida, on the lines of railway of the defendant, as that was the shortest route over the defendant's line of railway from Branford, Florida, to Seville, Florida, said route being a distance of 124.6 miles from Branford, Florida, to Seville, Florida, the shortest and safest route for said shipment. Yet the defendant did not safely and securely transport said cattle and deliver the same to the plaintiff uninjured, as it was obligated by law so to do; but on the contrary by the careless use and negligent management of the train of cars of the defendant used in transporting said cattle, and by the long continuous delay of said car of stock upon its line of road, said car of stock being carelessly and negligently, and in disregard of the plaintiff's rights, transported and carried from Branford, Florida, to High Springs, Florida, and from thence to Jacksonville, Florida, and from thence to Seville, Florida, covering a distance of 188 miles, and thereby caused great delay in the shipment of said cattle and the defendant thereby disregarded its duty and obligation to the plaintiff by failure to carry and transport said cattle the shortest and safest route from Branford, Florida, via High Springs, Gainesville and Palatka to Seville, Florida, by means of which careless and negligent handling of said car load of stock and of the delay in delivery, as aforesaid, eight head of the said cattle of the value of $120.00 died in transit, and were thereby totally lost to the plaintiff and 45 head of said cattle were crippled, wounded, bruised

and greatly damaged and reduced in value to the damage to the plaintiff in the sum of $90.00. And plaintiff avers that by reason of the failure of the defendant to properly carry said cattle as they were obligated so to do, and its failure to route said cattle the shortest and safest route over its lines, it was forced to unload and feed said cattle in Jacksonville, Florida, when in truth and in fact had the defendant shipped said cattle the shortest and safest route aforesaid, there would have been no necessity for unloading or feeding said cattle, which the defendant was required to do, and as a result thereof the plaintiff was forced to pay for said feeding."

The bill of lading or shipping contract attached to the declaration discloses no routing except, "destination Seville, State of Florida, County of Volusia, route A. C. L." Therefore, the allegation that it was the duty of the defendant and its agreement by implication of law to route the shipment by the shortest route over defendant's line of railway from Branford, Florida, to Seville, Florida, is not in conflict with the terms of the written contract. A. C. L. R. R. Co. v. Hinely-Stephens Co., 64 Fla. 175, 60 Sou. 749.

Question Two is as follows:

"Is not a bill of lading conclusive evidence of direction by which a shipment of cattle are received, carried and delivered, and is it not error for the trial court to permit introduction of evidence of an alleged verbal agreement made prior to the issuance of the bill of lading?"

The answer to Question One answers Question Two.

It would be entirely competent where the bill of lading or shipping contract shows no particular routing to prove by parol evidence that there was a verbal agreement between the shipper and the carrier to transport the shipment over a particular routing on its railroad. See Solary v.

Webster, 35 Fla. 363, 17 Sou. 646; Summers v. Fla. Pebble Phosphate Co., 50 Fla. 275, 39 Sou. 61; Jacobs v. Parodi, *et ux.*, 50 Fla. 541, 39 Sou. 833; Bass v. O'Berry, 59 Fla. 159, 51 Sou. 597.

Question Three is:

"Where it has been shown that a witness has been engaged in railroading for thirty years previous as trainman, flagman, switch-man and conductor, is it not error for the trial court to refuse to permit this witness to give his opinion as an expert as to handling given a carload of cattle on a particular trip of which he had personal knowledge?"

The question is based upon what occurred during the trial, reflected by the record as follows:

One, W. B. Stovall was on the stand as a witness for the defendant. He was in charge of the train which transported the cattle from Branford to High Springs. After showing his experience and the capacity in which he was employed at that time he proceeded to testify as follows:

"As to how this car was handled that night from Branford to High Springs, I will say it was handled next to my engine for the purpose of eliminating shock. Had it been on the rear, or in the center, it would have received slack running out, but being near the engine, the shock was eliminated or lessened to a great extent, and it did not receive any rough handling because we made no stops between Branford and High Springs. The engineer on that train was E. B. Thair. He has been in the service longer than I have, because he was in Waycross running switch engines when I came in. I was 32 to 35 years old. I have not done anything else but railroad work for the last thirty years. I was a trainman before I was a conductor.

"Thereupon defendant propounded to the witness the following question:

"From your experience as trainman, flagman, switchman, and as conductor, what would be your opinion as to the handling of that car on that train that night?

"But to said question the plaintiff then and there objected, but the said judge sustained the said objection over the protestation of the defendant that the witness had been properly qualified as an expert in the handling of trains, and declined to permit said question to be answered. To such ruling the defendant then and there objected."

There is no proffer in the record as to what the defendant sought to prove when the question was asked: "From your experience as trainman, flagman, switchman and as conductor, what would be your opinion as to the handling of that car on that train that night?"

It appears that he had already testified as to how the car involved was handled and had thereby placed his version of the facts before the jury. If it was the purpose of the defendant to have this witness testify giving his opinion as to whether or not defendant was guilty of negligence, or handled the car without negligence, we think the testimony was properly excluded. The witness could testify as to facts and from his experience as an expert could have testified as to what should have been done under the then existing conditions, or he could have testified as to what should not have been done. But it is for the jury and not the witness to determine whether or not acts committed or omitted constitute negligence. He could have testified whether or not the train was handled in a careful and efficient manner. This quastion was not asked him.

Questions 4, 5 and 6 were as follows:

"Question 4. Where, in a suit to recover damages for alleged negligence in the transportation of a carload of cattle, the evidence shows the defendant exercised reasonable care

in the transportation and delivery of the cattle, does not this evidence rebut the presumption of negligence and shift the burden to the plaintiff to prove negligence of the carrier by a preponderance of the testimony?"

"Question 5. Under the circumstances set forth in the foregoing question, and where the plaintiff thereafter fails to prove by a preponderance of the testimony any negligence of the carrier which was a proximate cause of the injuries sustained by the cattle, is it not error for the trial court to refuse to direct a verdict for the defendant?"

"Question 6. Where, in a shipment of cattle, the plaintiff shows delivery in good condition and the defendant's evidence shows the exercise of all ordinary and reasonable care in the transportation and delivery of the car of cattle and the cattle are delivered in bad condition, is it not presumed as a matter of law, that the unexplained loss or injuries are due to the natural propensities or inherent vices of the animals?"

These questions are argued together by plaintiff in error.

Plaintiff in error states the rule correctly, as follows:

"The rule is established that in shipments of cattle by common carrier, it is the duty of the plaintiff to prove delivery in good condition, receipt in bad condition, and the loss and value thereof. This creates a presumption of negligence and places the burden upon defendant of going forward with the testimony to show that the shipment moved with reasonable dispatch and that all due care was exercised and that defendant was not otherwise negligent in the premises or that the loss was occasioned by causes from which the carrier is exempt from liability, such as an act of God, or the inherent vices of the animals, etc."

And cites in support thereof A. C. L. v. Hinley-Stephens Co., *supra;* Walton Land & Timber Co. v. L. & N. R. Co.,

72 Fla. 66, 72 Sou. 485; and A. .C. L. R. Co. v. Farris & Co., 111 Fla. 412, 149 Sou. 561.

Question 4 assumes a condition, however, which substantial evidence in the record contradicts, viz.: It assumes that the evidence shows that the defendant exercised reasonable care in the transportation and delivery of the cattle, when there is, as heretofore observed, substantial evidence to show that the defendant did not exercise reasonable care in the transportation and delivery of the cattle.

There is evidence which, if true, shows that the train was roughly handled, that the car was not routed as directed by the shipper and as the defendant, through its agent. agreed that it would be routed, and that by so routing the shipment it was required to travel a much greater distance than it would have been required to travel, had it been routed as directed by the shipper and as substantial evidence shows it was agreed to be handled by the defendant.

The fifth question to be answered as has been the fourth.

The sixth question assumes that to have been proven and established as a fact which was contradicted by the plaintiff. Cowart testifying as a witness in his own behalf testified in effect that he rode on the freight train from Branford to High Springs which train carried the car of cattle and that he quit the train at High Springs because the handling of the train was so rough he could not stand it. He testified that it seemed to him like it was going to pieces; that he tried to ride lying down on a seat but that the train was handled so roughly that it shook him off the seat and that during the trip from Branford to High Springs the train was jerked every 50 or 100 feet. If the jury believed this statement, they were warranted in the conclusions that the train was not handled in an ordinarily careful manner.

The seventh question is:

"Where a railroad declines a claim for damages for alleged failure to safely transport and deliver a shipment of cattle because the circumstances are such as to raise a fair doubt as to the legality and justness of the claim as one to be paid without a full investigation, including a judicial investigation, where the facts are in dispute concerning it, is it not error in the trial of the case for the trial court to permit a recovery of 50 per cent interest and attorney's fees under Sections 6647 and 6648, Compiled General Laws of Florida, 1927?"

Section 4582 R. G. S., 6647 C. G. L., and 4583 R. G. S., 6648 C. G. L., have heretofore been held valid by this Court. See A. C. L. R. Co. v. Cachman, 59 Fla. 130, 52 Sou. 377; A. C. L. R. Co. v. Wilson & Toomer Fertilizer Co., 89 Fla. 224, 104 Sou. 593.

Plaintiff in error relies on the case of F. E. C. R. Co. v. Geiger, 64 Fla. 282, 60 Sou. 753, in which case it was said:

"As the service rendered and the rates charged by public service corporations are affected by all expenditures made by them, including unreasonable regulations and recoveries for injuries to persons and property, the public are interested in such expenditures and recoveries. The law forbids the payment by public service corporations of illegal demands of all kinds and of unreasonable or excessive amounts for labor, property or management or other services of persons used in rendering the public service undertaken; and likewise the law forbids the payment of illegal or excessive damages for the negligent injury of persons or property. If there is no legal liability for an injury the law forbids a recovery. If there is liability the law allows recovery of reasonable damages and forbids excessive recoveries, as well as affords a remedy for an award in inadequate damages.

It is therefore the duty of public service corporations to respond promptly to legal and reasonable demands for their negligent injuries to persons or property, and also to resist demands when there is no legal liability, as well as to resist unreasonable or excessive demands where there is liability. Liability for negligence is determined by the application of appropriate principles of law to the circumstances of the particular case. The law does not provide for recoveries of arbitrary amounts as damages for negligent injuries to persons; but where there is liability, a recovery of reasonable damages is allowed, the amount to be determined from the circumstances of each case by a jury under appropriate instructions from the court, subject to such appellate review as is provided by law. Litigation is justified only when the circumstances of the particular case warrant a reasonable belief that a refusal or failure to compenste for negligent injury is unjust, or that the demand is unlawful or excessive. In this case the defendant was justified in contesting the liability and the damages awarded."

The enunciations found in that opinion, however, do not control the instant case. That case involves personal injuries while this case involves loss or damage to freight and is controlled by the statutory provisions hereinabove cited.

The Wilson-Toomer Co. case, *supra,* presents unusual facts and circumstances and in that case Mr. Presiding Justice WHITFIELD, speaking for the Court, said:

"In view of the amount of the claim, the unusual circumstances of the case and the uncertainty of the defendant's liability, it was the defendant's right to fully investigate and test the legality and justness of the claim; and to impose heavy penalties for doing so, even under statutory authority, would deny to the defendant the rudiments of fair play which would violate the provisions and principles of the

Fourteenth Amendment to the Federal Constitution, and of Sections 1, 4 and 12 of the Declaration of Rights of the Florida Constitution. See Chicago & N. W. R. Co. v. Nye Scheider Fowler Co., *supra; Ex Parte* Young, 209 U. S. 123, 28 Sup. Ct. Rep. 441; Florida East Coast R. Co. v. State, 79 Fla. 66, 83 South. Rep. 708, 11 A. L. R. 884, Notes. Besides this, unreasonable penalties and damages tend to increase service rates or to reduce service efficiency which is detrimental to the public who are patrons of the common carriers. See Florida East Coast R. Co. v. Geiger, 64 Fla. 282, text 294, 60 South. Rep. 753. Apparently this was appreciated by the trial court and by the plaintiff's counsel who acquiesced in the award of the amount of the claim with legal interest without the penalty interest demanded in the declaration under the statute. No harm resulted to the defendant by the denial of the motion to strike from the declaration the demand for penalty interest. The charge of the court to the jury that 'if you find from the evidence that the plaintiff is entitled to recover, you will include and assess in your verdict interest at the rate of 50 per cent per annum on the principal sum so found by you,' was, as to the allowance of penalty interest not a permissible application of the statute to the facts of this case; but the verdict approved by the court awarding only legal interest rendered the quoted charge harmless."

The unusual circumstances in that case are not present in the instant case. Neither is the opinion in the case of A. C. L. R. Co. v. Connell, 111 Fla. 572, 149 Sou. 596, in point here.

There are no unusual or extraordinary conditions involved in this case. It is a case where there is substantial evidence that cattle were delivered for shipment in good condition; that the agent for the carrier agreed to take the

cattle for shipment by the shortest routing over its railroad; that the carrier was bound to handle the shipment with ordinary care and dispatch; that the carrier took the shipment over a longer route than that agreed upon; that the train was handled in such a rough manner as to throw the cattle down in the car, caused many of them to be trampled upon, crippled, and some killed.

The amount of the claim was reasonable and, according to substantial evidence in the record, it was fair, just and bona fide.

We cannot say that this was one of the questionable claims which bore such earmarks of *mala fides* and paucity of foundation as to make it the duty of the carrier to contest the claim in court and, therefore, to relieve it of the penalties imposed by statute upon its failure to promptly pay the claim.

The judgment is affirmed.

So ordered:

TERRELL, C. J., WHITFIELD and CHAPMAN, J. J., concur.

BROWN, J., dissents in part.

THOMAS, J., not participating because case was presented before he became a member of the Court.

BROWN, J. (dissenting in part).—Under all the circumstances of this case I do not think the 50 per cent interest penalty should have been imposed, in view of our former decisions.