SMITH, Judge.
Florida East Coast Railway Co. (FEC) appeals from a circuit court judgment for Sheffield on Sheffield’s counterclaim for damages resulting from FEC’s failure to perform an oral agreement to transport Sheffield’s intrastate molasses shipments according to a schedule entitling Sheffield to an approved discount, based on quantity shipments during a year, from ordinary tariff rates approved by the Public Service Commission (PSC). ' FEC urges that the alleged oral agreement has the unlawful effect of nullifying rates prescribed in the public interest by the PSC; that the trial court improperly gave the oral agreement an effect that modifies contract documents; and that the damages awarded included improper elements. We affirm.
The PSC-approved tariff generally authorized and required a charge of $.43 per hundred pounds of blackstrap molasses shipped from the molasses exchange at Belle Glade, Florida, to Jacksonville, where Sheffield received it at a leased siding; but a tariff supplement authorized a charge of $.27 per hundred pounds if shipments exceeded 12,000 tons in a year. Between May 26,1973 and May 25,1974, Sheffield shipped only 8,611.56 tons of molasses via FEC. Applying the greater rate retrospectively, the trial court granted FEC a summary judgment for the balance due after credit for amounts remitted during the year at the lower rate. On a jury verdict the court then entered judgment for Sheffield in effect finding that the parties orally agreed to a car-handling schedule that would permit Sheffield to ship in excess of 12,000 tons, that FEC failed to perform according to its undertaking and that Sheffield’s recoverable damages were the amount of the greater tariff rates previously adjudged as owing to FEC and Sheffield’s extra costs in supplementing molasses supplies at Jacksonville by truck during the year, amounting to $8,800. The jury rejected Sheffield’s claim for profits on the sale of additional molasses which, he asserted, he would have sold but for the inadequacy of FEC’s rail service. FEC appeals from the net judgment against it in the amount of $8,800.
The gist of the disputed oral agreement was that, in consideration of Sheffield’s transport business between Belle Glade and Jacksonville, FEC would handle three tank cars, to be leased by Sheffield from another, with such dispatch as to provide Sheffield one loaded tank car on his Jacksonville siding at all times. The parties contemplated, so Sheffield contends, that such service would enable Sheffield to ship more than 12,000 tons each year. FEC’s appeal makes no point of the sufficiency of the evidence to support a jury finding of such an oral agreement, nor of the certainty of such an agreement or its enforceability despite the Statute of Frauds.
FEC rightly urges that regulated transport carriers are not at liberty to charge more or less than authorized tariff rates established for the protection of the industry and the public. Sections 350.07, .08, .12, Florida Statutes (1975). See also Pittsburgh, Cincinnati, Chi. & St. L. Ry. Co. v. Fink, 250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151 (1919); Moore Meats, Inc. v. Alterman Transport, Inc., 301 So.2d 143 (Fla. 3d DCA 1974); Louisville & Nashville R. Co. v. Speed-Parker, Inc., 103 Fla. 439, 137 So. 724 (1931). Yet the lower tariff rate for quantity shipments was fully authorized by the PSC in certain circumstances, and we know of no principle that would prohibit a carrier from contracting, insofar as the enabling circumstances are within its control, to bring them about for the mutual benefit of itself and its shipper. The carrier’s failure to perform as agreed does not itself nullify the greater tariff rates payable under law by the shipper when conditions for the lower rate are not met, but the tariff does not preclude assessment of damages against the carrier for the shipper’s consequent loss, including the greater rates payable.
Enforcement of FEC’s oral agreement is not precluded as modifying, by pa-rol, the written contract documents executed by FEC and Sheffield. FEC’s undertaking, proved to the satisfaction of a jury, is not inconsistent with the terms of the *682 written tariff or the numerous individual bills of lading which pertained to particular molasses shipments, not to the manner of handling filled and empty tank cars in a year-long series. The agreement relied on by Sheffield was collateral to the contract documents and did not vary their effect. See Atlantic Coast Line R. Co. v. Cowart, 140 Fla. 596, 190 So. 546 (1939); Schwartz v. Zaconick, 68 So.2d 173 (Fla.1953); Graham v. Commonwealth Life Ins. Co., 114 Fla. 585, 154 So. 335 (1934).
The jury could reasonably have concluded from the evidence that the parties contemplated Sheffield would be required to supplement its molasses supply, should FEC fail in its undertaking, and would incur extra transportation costs in doing so. Damages for the loss were properly awarded. Atlanta & St. Andrews Bay Ry. Co. v. Thomas, 60 Fla. 412, 53 So. 510 (1910); Evenson v. Miami Medical Center, Inc., 128 So.2d 626 (Fla. 3d DCA 1961).
AFFIRMED.
RAWLS, Acting C. J., and ERVIN, J., concur.